### MILLER et al. v. TENNIS.

No. 20051. Opinion Filed Sept. 24, 1929.

Rehearing Denied Nov. 26, 1929.

Felix C. Duvall, George W. Miller, and Ford & Montgomery, for plaintiffs in error.

John L. Ward, Phil W. Davis, Jr., B. A. Hamilton, and L. O. Todd, for defendant in error.

CULLISON, J. This is an appeal from the district court of Tulsa county, Okla., wherein the defendant in error, H. H. Tennis, a minor, by T. M. Tennis, his next friend and guardian, plaintiff below, sued plaintiffs in error, Geo. L. Miller, Zack T. Miller, and Geo. L. Miller, Zack T. Miller, Joseph C. Miller, Jr., and Geo. W. Miller, executors of the estate of Joseph C. Miller, deceased, as individuals and partners, and J. E. Carson and W. A. Brooks, trustees of the Miller Brothers 101 Ranch Trust, for $75,000 damages for personal injuries alleged to have been negligently inflicted upon the defendant in error by plaintiff in error while in their employment in the state of Oregon.

The parties to this appeal will hereinafter be referred to as they appeared in the trial court.

The plaintiff, Harlem H. Tennis, in his first amended petition alleges substantially as follows:

Said defendants on or about April 14, 1926, owned and operated and maintained a traveling show or circus as an enterprise for business profit; that the property and equipment of the same consisted of wagons, railroad cars, and such other equipment adapted to the purpose of said business, and for the conveyance of said property from place to place throughout the United States, for the purpose of furnishing exhibitions and performances; that in the conduct of said business and in the conveyance of said property from place to place as aforesaid the defendant Miller Brothers 101 Ranch Trust, and the defendants Brooks and Carson, trustees aforesaid, had appointed and authorized the defendants Joseph C. Miller, Zack T. Miller, and George L. Miller to act as their agents and representatives, and to manage and control said shows, and that at the time of the alleged acts of which the plaintiff complains, and which hereinafter are more fully set out, the said Joseph C. Miller, Zack T. Miller, and George L. Miller were acting for themselves in the management, supervision, conduct, and

transportation of said 101 Ranch Show and its properties, and also that they were acting, in pursuance of said appointment and authority, as the agents of said defendants Miller Brothers 101 Ranch Trust and the aforesaid trustees thereof; that on or about the said 14th day of April, 1926, the plaintiff was employed by the defendants as a laborer and helper to do manual labor on or about the equipment of the said 101 Ranch Show, which employment was at Marland in the state of Oklahoma; that while the plaintiff was in said employment said 101 Ranch Show was moved by the defendants in railroad trains upon cars belonging to and maintained by the defendants to the city of Eugene, Ore., for the purpose of rendering an exhibition thereof at said point.

The plaintiff further alleges that at said time and place the plaintiff, acting within the scope of his said employment and while performing the duties thereof, was engaged in assisting to unload certain wagons consisting of a part of the equipment of said show from a string of flat cars, upon which the defendants had transported them to said point, and that the defendants adopted the system and caused the said wagons to be unloaded by placing an inclined runway between one end of said string of cars and the ground, and by rolling said wagons down said incline as they were brought one by one from the surface of said cars to said incline; that for the purpose of controlling each of said wagons after it had begun to descend to the ground a hook rope terminating in an iron hook was held at one end by a helper who stood on the ground at the side of the car with which said incline connected; that said rope was wound around a circular post fastened on the said side of said car, and that when each of said wagons approached said incline, an iron hook in which the other end of said rope terminated was hooked in a ring in the rear of the wagon; that after the wagon began the descent its speed was controlled by the helper standing on the ground, who regulated the movement of the same around said post; that another helper was stationed on the surface of said car for the purpose of hooking said rope to said wagon, and was required to follow the wagon down the incline and to bring said hook back upon the car when the wagon reached the ground.

The plaintiff further alleges that at said time and place after he had hooked said rope to a wagon and was proceeding to follow the same to the ground, said hook, by reason of being old, worn, weak, and lacking in proper temper and tensile strength, and by reason of being insufficient to the purpose of supporting the burden to which it was then and there placed by defendants, straightened or spread so that said wagon was released and said hook rebounded with great force toward and upon the plaintiff and struck the plaintiff in the forehead, crushing his skull and depressing the same upon the brain of the plaintiff.

The plaintiff further alleges that he sustained a compound fracture of the skull, that he was rendered unconscious, that he suffered and will continue permanently to suffer great and excruciating pain in and about his head and skull, that his earning capacity had been permanently destroyed, that he was greatly and permanently disfigured in and about his face and head, that as the result of said wounds, injuries and disfigurement he has suffered and will continue to suffer great mental pain and humiliation, that at the time he received said injuries he was a strong and healthy boy and had an expectancy in life of 44.85 years, that he was capable of earning the sum of $100 per month, and that his earning capacity would have increased from time to time as he became older, that his mind and mental function has been impaired, and that said impairment is permanent.

Plaintiff further alleges that said work in which the plaintiff was engaged, was dangerous and involved risks and dangers to the employees engaged therein and to the plaintiff as such employee.

The plaintiff further alleges that at the time of the receipt of his alleged injuries the law of the state of Oregon, under which he alleges he is entitled to recover herein, was an act of said state known as the Employer's Liability Act. That said Employer's Liability Act provided, in part·

"* * * And generally, all owners, contractors or subcontractors and other persons having charge of, or responsible for, any work involving a risk or danger to the employees or the public, shall use every device, care and precaution which it is practicable to use for the protection and safety of life and limb, limited only by the necessity for perserving the efficiency of the structure, machine or other apparatus or device, and without regard to the additional cost of suitable material or safety appliance and devices."

Plaintiff alleges that the defendants failed to observe and to comply with the Employ-

er's Liability Act in that it was practicable at said time and place for the defendants to use a suitable and proper snubbing rope and hook sufficient to withstand the strain and stress to which it was subjected at the time the plaintiff was injured; for the defendants to have used a new hook, to inspect said apparatus used in said unloading, including said snubbing rope and hook, so as to detect the imperfections and the unsuitability of the same; that it was practicable for the defendants to provide an additional snubbing rope which could have been operated from the opposite side of said car to that where the snubbing post was situated, to warn and instruct the plaintiff of the dangers arising from said work, to make and promulgate rules provided for the conduct of said business for the unloading of said equipment from said cars and in particular prohibiting employees using and retrieving said hook from leaving the surface of said car and from remaining in proximity to said wagons as they descended the incline, to provide an additional helper or employee to remain upon the ground at or near the point where said wagons were stopped after reaching the ground and to unhook said hook rope so as to permit the same to be dragged or pulled by the person performing the duties of the plaintiff without such person following said wagons or descending to the ground; that the defendants failed to do each of the things so alleged by the plaintiff to have been practicable for them to do, and that by reason of each such alleged failure of the defendants to use every device, care, and precaution required of them by said Employer's Liability Act, the defendants were negligent, and that said negligence proximately and solely caused the injuries of which the plaintiff complains.

The plaintiff alleges that by reason of the foregoing he has been injured and damaged in the sum of $75,000, for which he prays judgment against the defendants and each of them.

The defendants answered, denying all the allegations of plaintiff's petition, denied that plaintiff was employed by them, and alleges that if employed at all, he was employed by the 101 Ranch Show Company, a Delaware corporation; the defendant trustees denied that they authorized the three individual Millers to act as their agents and to conduct and operate the 101 Ranch Shows, and specifically denied that any of the defendants were guilty of any negligence.

Plaintiff replied, denying generally the allegations of the answer inconsistent with the allegations of his petition.

The defendant Joseph C. Miller died pending this action and the cause was revived by formal proceedings against his executors.

The case was tried to the court and jury and a judgment rendered June 20, 1928, in favor of plaintiff and against defendants for the sum of $30,000. Motion for new trial was filed and overruled and defendants appeal to this court.

Defendants set out six assignments of error which they choose to call "points," as follows:

(1) Oklahoma Workmen's Compensation Act barred plaintiff's recovery in the absence of pleading and proof that the law of the state of Oregon, where the accident occurred, gave plaintiff a different remedy or right of action.

(2) Evidence was admitted which was prejudicial.

(3) On his own motion, the court should have charged the jury on contributory negligence in mitigation of damages.

(4) Instructions Nos. 8 and 9 are in conflict with each other.

(5) Excessive recovery; and

(6) Sufficiency of the evidence.

1. The defendants contend that plaintiff is barred from recovery in this action unless plaintiff pleads and shows that the Oregon Employer's Liability Act is different in remedy and right of action to the Oklahoma Workmen's Compensation Act.

To be more definite, the defendants say, on page 67 of their brief:

"In order for plaintiff to maintain this action in the courts of Oklahoma, it was incumbent upon him to plead and prove that the state of Oregon did not have a compensation act the same as the state of Oklahoma."

The defendants further contend that:

"The Oregon Employer's Liability Act, set out in plaintiff's petition, and which was introduced in evidence, is in effect the same as the factory act of the state of Oklahoma." (Pg. 61, defendants' brief.)

We deem it unnecessary to determine or even discuss the question suggested by defendants in their first assignment of error, namely:

(1) That the state of Oregon did not have a Compensation Act the same as Oklahoma, or

(2) That the Oregon Employer's Liability Act is in effect the same as the Factory Act of Oklahoma.

It does not appear anywhere in the record or plaintiff's brief that the plaintiff has predicated his right to recover on the Workmen's Compensation Act of Oklahoma, or on the Oklahoma Factory Act.

Plaintiff in his petition alleges that at the time plaintiff was injured, he, the plaintiff, was in the state of Oregon; that he bases his right to recover on the Oregon law known as the Oregon Employer's Liability Act, and then cites and pleads all the relevant provisions of said law upon which he relies.

We are, therefore, called upon to determine whether or not the Employer's Liability Act of Oregon, the law upon which plaintiff rests his case, affords a right of action to the plaintiff to recover damages for an injury received in said state, and can said action be maintained in this state.

"It is a well-settled rule [of law] that the actionable quality of acts causing death or bodily injuries is to be determined by reference to the lex loci rather than lex fori." 56 L. R. A. 193.

Again:

"It is also a well-established rule that in enforcing such cause of action the court is to be governed with reference to all matters pertaining to the substantive right, including defenses, by the lex loci, rather than the lex fori." 56 L. R. A. 210.

It is uniformly held by our courts that when an injury occurs in one state and redress is sought in another state, the right of action must stand, if at all, on the statute of the state where the injury occurred:

"There is apparently no conflict in the decided cases on the point that so far as the right of action is concerned it must stand if at all on the statute of the state where the injury occurred and not of the state where the redress is sought." 12 C. J. 454; Hamilton v. Hannibal, etc., R. Co., 39 Kan. 56, 18 Pac. 57; Oates v. Union Pac. R. Co., 104 Mo. 514, 16 S. W. 487, 24 A. S. R. 349.

In Louisville & N. R. Co. v. Williams, 113 Ala. 402, 21 South. 938, the court said:

"The legal consequences of a person's acts are determined by the law obtaining when and where the acts are performed"; and

again, "the wrongful act causing the death having been committed in Tennessee," the right of action must be determined by the law of that state.

"It is also well established that if the injury occurs in one state and death results therefrom in another, the cause of action is regarded as having arisen in the former state and is therefore governed by its laws." 56 L. R. A. 218, citing: Van Doren v. Penn. R. Co., 93 Fed. 260, 35 C. C. A. 282; Louisville & N. R. Co. v. Williams, 113 Ala. 402, 21 South. 938; Derr v. Lehigh Valley R. Co., 158 Pa. 365, 27 Atl. 1002; DeHarn v. Mex. Nat. R. Co., 86 Tex. 68, 23 S. W. 381; Needham v. Grand Trunk R. Co., 38 Vt. 294; Rudiger v. Chicago, St. P., M. & O. R. Co., 94 Wis. 191, 68 N. W. 661.

In McDonald v. Mallory, 77 N. Y. 546, 33 A. R. 664, the court held:

"The liability of a person for his acts depends, in general, upon the laws of the place where the acts were committed, and although a civil right of action acquired, or liability incurred, in one state or country for a personal injury may be enforced in another to which the parties may remove or where they be found, yet the right or liability must exist under the laws of the place where the act was done."

The important provisions of the employer's Liability Act of Oregon are as follows (Acts of the Legislature of Oregon know as the Employer's Liability Act of said state, and contained in Session Laws of Oregon of 1911, p. 16, codified as sections 6785 to 6791, Olson's Oregon Laws):

"Be it enacted by the people of the State of Oregon:

"Sec. 1. All owners, contractors, subtractors, corporations or persons whatsoever, engaged in the construction, repairing, alteration, removal or painting of any building, bridge, viaduct, or other structure, or in the erection or operation of any machinery, or in the manufacture, transmission and use of electricity, or in the manufacture or use of any dangerous appliances or substance, shall see that all metal, wood, rope, glass, rubber, gutta percha, or other material whatever, shall be carefully selected and inspected and tested so as to detect any defects, and all scaffolding, staging, false work or other temporary structure shall be constructed to bear four times the maximum weight to be sustained by said structure, and such structure shall not at any time be overloaded or overcrowded, and all scaffolding, staging or other structure more than 20 feet from the ground or floor shall be secured from swaying and provided with a strong and efficient safety rail or other contrivance, so as to prevent any person from falling therefrom, and all

dangerous machinery shall be securely covered and protected to the fullest extent that the proper operation of the machinery permits, and all shafts, wells, floor openings and similar places of danger shall be enclosed, and all machinery other than that operated by hand power shall, whenever necessary for the safety of persons employed in or about the same, or for the safety of the general public, be provided with a system of communication by means of signals, so that at all times there may be prompt and efficient communication between the employees or other persons and the operator of the motive power, and in the transmission and use of electricity of a dangerous voltage full and complete insulation shall be provided at all points where the public or the employees of the owner, contractor or subcontractor transmitting or using said electricity are liable to come in contact with the wire, and dead wires shall not be mingled with live wires, nor strung upon the same support, and the arms or supports bearing live wires shall be especially designated by a color or other designation which is instantly apparent, and live electrical wires carrying a dangerous voltage shall be strung at such distance from the poles or supports as to permit repairmen to freely engage in their work without danger of shock; and generally, all owners, contractors, or subcontractors and other persons having charge of, or responsible for, any work, involving a risk or danger to the employees or the public, shall use every device, care and precaution, which it is practicable to use for the protection and safety of life and limb, limited only by the necessity for preserving the efficiency of the structure, machine or other apparatus or device, and without regard to the additional cost of suitable material or safety appliances and devices.

"Sec. 2. The manager, superintendent, foreman or other person in charge or control of the construction or works or operation, or any part thereof, shall be held to be the agent of the employer in all suits for damages for death or injury suffered by an employee.

"Sec. 3. It shall be the duty of owners, contractors, subcontractors, foremen, architects or other persons having charge of the particular work, to see that the requirements of this act are complied with. * * *

"Sec. 5. In all actions brought to recover from an employer for injuries suffered by an employee, the negligence of a fellow servant shall not be a defense where the injury was caused or contributed to by any of the following causes, namely: Any defect in the structure, materials, works, plant or machinery of which the employer or his agent could have had knowledge by the exercise of ordinary care: the neglect of any person engaged as superintendent, manager, foreman, or other person in charge or control of the works, plant, machinery or appliances; the incompetence or negligence of any person in charge of, or directing the particular work in which the employee was engaged at the time of the injury or death; the incompetence or negligence of any person to whose orders the employee was bound to conform and did conform and by reason of his having conformed thereto the injury or death resulted; the acts of any fellow servant done in obedience to the rules, instructions or orders given by the employer or any other person who has authority to direct the doing of said act.

"Sec. 6. The contributory negligence of the person injured shall not be a defense, but may be taken into account by the jury in fixing the amount of damage. * * *"

From a careful reading of the above provision of the Employer's Liability Act of Oregon, it is apparent that this act upon which plaintiff rests his case did afford plaintiff a right of action to recover damages of defendants for the injury in the instant case, had said action been brought in the state of Oregon, and said action can be brought and maintained in the state of Oklahoma.

In vol. 12 C. J., at page 453, the law is very clearly stated as follows:

"In the United States, in other than penal actions, the general rule is that the court will, if it has jurisdiction of the necessary parties and can do substantial justice between 'them in accordance with its own forms of procedure, enforce the foreign law if it is not contrary to the public policy of the forum, to abstract justice or pure morals, or such as may injure the state or its citizens, and as between the different states, when a cause of action in tort has vested in one state under the common law as there understood and administered, the mere existence of a variance of view in the forum resorted to, not amounting to a fundamental difference of policy, will not prevent an enforcement of the obligation admitted to have arisen by the law which governed the conduct of the parties."

From a careful reading of the above and foregoing well-established rules of law it seems, and this court holds, that it is immaterial whether the foreign cause of action for tort which it is sought to enforce rests on a common-law or statutory right so long as the action is personal and transitory. 12 C. J. 453.

This view of the case is clearly sustained by the federal courts, the courts of District of Columbia, Indiana, Iowa, Kentucky, Missouri, Nebraska, New York, Pennsylvania, Rhode Island, Texas, and Virginia, in

many decisions from those states too numerous to mention.

2. Defendants' second point is that evidence was admitted that was prejudicial.

The record in this case shows that plaintiff was permitted to introduce in evidence two income tax reports of J. C. Miller, Zack T. Miller, and George L. Miller, for the years 1925 and 1926, over the objection and exceptions of defendants, which objection was based upon the claim "that individual income tax returns, either state or federal, are not open to the general public and are not admissible as evidence in a civil case."

We think the only object of the plaintiff in introducing the income tax reports and the show book was to show the relation of the Miller Brothers to the show business only, and for that reason the testimony complained of by defendants in their second point was not incompetent.

3. Defendants contend that the court, on his own motion should have charged the jury on contributory negligence in mitigation of damages.

Section 6 of the Employer's Liability Act of the state of Oregon, provides:

"The contributory negligence of the person injured shall not be a defense, but may be taken into account by the jury in fixing the amount of the damage."

We have carefully read the answer to the first petition, the answer to the amended petition, and the defendants' opening statement to the jury, and the pleadings do not show any intention on the part of defendants of attempting to prove contributory negligence on the part of the plaintiff, neither did they present to the trial court any written request for instructions to that effect.

In the case of Chicago, R. I. & P. Ry. Co. v. Pounds, 1 Ind. Ter. 51, 35 S. W. 249, the court held:

"In action for personal injuries the burden of proof to show contributory negligence is on defendant."

We think the court applied all the law to the facts as presented by the pleadings in this case.

"In charging the jury, it is sufficient for the court to state the law of negligence as applied to the facts of the case, without giving any abstract definitions of negligence, gross negligence or contributory negligence." 20 R. C. L. pg. 172.

In vol. 14, R. C. L., at page 795, the rule as to the necessity of requesting instructions, is stated as follows:

"It is hardly possible for any court to charge in such language as to comprehend every possible point of view in which the case might be put or to notice every exception to the general rules of law. Therefore it is generally considered to be the duty of counsel to aid the court in the function of instructing the jury. And the very purpose of permitting requests to charge is that the jury may be fully informed as to all the law governing the case, and the trial court enabled to correct at once any mistakes that may have been made in instructing them. The rule is therefore firmly established that where the charge of the court does not cover all phases of the case, counsel is bound to call its attention to the omission by an appropriate request, or to be precluded from making such failure available as reversible error."

The above and foregoing rule is supported by an unusually large number of recognized authorities.

4. Defendants in their fourth point complain only of instructions Nos. 8 and 9 given by the court.

Instruction No. 8 reads as follows:

"You are instructed that the defendant, Miller Brothers, had a legal right to cause the 101 Ranch Show Company, a corporation, to be incorporated under the laws of the state of Delaware, and that said corporation when so organized had a legal right to enter into a lease contract with the defendant trustees if agreeable to them, with reference to the show property of the Miller Brothers 101 Ranch Trust, and that in carrying out the said lease contract, said corporation had a legal right to operate said show.

"If you find from the evidence in this case that the defendants, Miller Brothers, did cause said corporation to be organized, and that the lease contract was entered into with the defendant trustees, and that the corporation was operating the said show at the time the plaintiff was injured, and that the plaintiff was in the employ of said corporation, then none of the defendants herein would be liable to the plaintiff in this case, even though you may find that some of the defendants were traveling with said show and exercising certain control over the same."

We think the above instruction is most favorable to the defendants, and the record does not show that they excepted to the giving of the instruction.

The 9th instruction, complained of by defendants, is as follows:

"You are instructed that it is your duty

to determine whether or not the plaintiff was in the employ of the defendants, or any one or more of them, at the time of the receipt of his alleged injuries. If you find by a fair preponderance of the evidence that at the time of the receipt of his alleged injuries the plaintiff was in the employ of Joseph C. Miller, Zack T. Miller, George L. Miller, Miller Brothers 101 Ranch Trust, and W. A. Brooks and J. E. Carson, as trustees of the Miller Brothers 101 Ranch Trust, or any of them, then you will proceed to determine whether or not such defendants or defendant has been guilty of negligence as hereinafter defined to you in these instructions, but unless you find by a fair preponderance of the evidence that at said time the plaintiff was in the employment of said defendants, or one or more of them, the plaintiff cannot recover in this action. You are instructed that in determining the question by whom the plaintiff was employed at said time, you will take into consideration all the facts and circumstances surrounding said employment, including the relationship of all parties who may have been connected with the enterprise in which the plaintiff was employed, the relationship of said parties to each other and their interest, if any, in the property and the work about and in which the plaintiff was engaged, and will determine from all said facts and circumstances who was the real and actual employer of the plaintiff at said time, and to whom he was actually and in good faith rendering service at said time."

"Given and defts. Except."

Defendants' only complaint to instruction No. 9 seems to be of the language used by the court at the close of the instruction, namely: "and to whom he was actually and in good faith rendering service at said time." Defendants contend that the court injected into the case the question of fraud or good faith by the language quoted."

We cannot agree with the defendants that this language of the court in said instruction will bear any such interpretation. It seems to us that the court very properly instructed the jury that it must from the evidence, facts, and circumstances in the case determine to whom the plaintiff was rendering service at the time he was injured.

5. Defendants in their fifth point say:

"The verdict in this case was grossly excessive."

It is contended that the verdict of the jury is excessive.

It is undisputed that the plaintiff received a very severe, deep, ugly frontal fracture of the skull.

The attending physician at Eugene, Ore., Dr. W. B. Neal, testified (C.-M. 294):

"The forehead, more to the left than otherwise, was badly caved in, showing evidence that something struck him in the forehead and caved in the skull. It was caved in for a distance of perhaps an inch and a half deep, a great cave-in in the skull. The operating record shows the fracture of the frontal bone, a compound fracture, a ragged break with the bone pushed down into the dura, small spicules were pushed inward, the sagital sinus punctured with a small spicule of bone."

Dr. Charles D. Donahue, the operating surgeon at Euguene, Ore., testified (C.-M. 306):

"The skull, the frontal bone was with a hinge, or the eye brows was torn loose at the top, and driven directly down onto the brain."

Dr. H. L. Farris, a surgeon in the state of Oklahoma, testified (C.-M. 317) that he had taken certain X-Rays of the skull of the plaintiff in December, 1926, March, 1927, and June, 1928; and stated at page 324, case-made:

"This plaintiff has had a fracture of the frontal bone, as outlined from the other pictures in the same location, showing the piece of bone driven downward toward the frontal sinus and the fracture extending in the same direction around the side, one fork going off toward the eye and the other one on back over the ear. This piece of bone, if anything, seems to have sunk a little lower down into the inside of the frontal bone than it was in the original picture. * * * It is undoubtedly permanent."

We think the evidence in the record was amply sufficient to warrant the jury in finding that the plaintiff will be a constant sufferer the remaining days of his life.

In the case of Marland Refining Co. v. McClung, 102 Okla. 56, 226 Pac. 312, the facts and circumstances being very similar to those in the instant case, the court said:

"The evidence in the record will support a finding that plaintiff will be a constant sufferer the remaining days of his life, and the injury is such that he is and will be deprived of earning a livelihood, and the injury is of such a nature that he is liable to be afflicted with epilepsy or insanity. When these facts are considered in connection with the law as announced in the prior decisions of this court heretofore cited, we do not think it can be said that the verdict is so excessive as to justify this court in disturbing the same."

In the case of Boling v. Ashbridge, 84 Okla. 280, 203 Pac. 894, this court held:

"When the proofs of damage are submitted to a jury under proper instructions, in a suit for personal injuries, and the verdict not being so excessive as to raise the presumption that the jury was actuated in rendering such verdict by passion or prejudice, and there being no specific proofs otherwise, showing that the jury was so actuated, and the trial judge fails to act and enters judgment on the verdict, held, that the Supreme Court will not interfere with the verdict of the jury by ordering a remittitur."

This court has consistently followed the above rule: Oklahoma Prod. & Ref. Corp. of America v. Freeman, 88 Okla. 166, 212 Pac. 742; Sapulpa Electric Int. Co. v. Broome, 93 Okla. 115, 219 Pac. 289.

This court does not believe the amount of damage fixed by the jury excessive.

6. Defendants in their sixth point, "Sufficiency of the Evidence," say:

"We have searched this record in vain to find some evidence which reasonably supports the proposition that the defendants were operating the show at the time the plaintiff was injured and that he was in their employ, but we have been unable to discover it."

The theory of the defendants in this case was that the relation of employer and employee did not exist between the plaintiff and any of the defendants, but that the plaintiff was employed by the 101 Ranch Show Company, a Delaware corporation. The parties joined as defendants in this action are:

"George L. Miller, Zack T. Miller, and George L. Miller, Zack T. Miller, Joseph C. Miller, Jr., and George W. Miller, executors of the estate of Joseph C. Miller, deceased, sued herein as individuals and partners, and J. E. Carson and W. A. Brooks, trustees of the Miller Brothers 101 Ranch Trust."

The contract of employment between plaintiff and defendants recites that the employers are "Miller Bros. 101 Ranch Real Wild West and Great Far East, a corporation." and is signed "Miller Brothers 101 Ranch Show—by W. F. Christian."

The trust agreement "Miller Brothers to Miller Bros., 101 Ranch Trust," which was received in evidence, provides in part:

"Whereas, the firm of Miller Brothers, a partnership consisting of Joseph C. Miller, Zack T. Miller and George L. Miller, is the owner of all live stock and personal property of whatsoever kind or character located and used on said real estate, and in connection with the operation of what is known and designated as the '101 Ranch.' "

An examination of the record shows sufficient evidence to support the finding of the jury that plaintiff was in the employ of the defendants designated in the petition and that plaintiff was in their employ at the time of his injury.

The evidence shows that plaintiff knew the three defendant Miller brothers; that when plaintiff was first employed at Marland, Okla., on the show property, he saw Joseph C. Miller inspecting the train and that he traveled with the train; that when the show reached Kansas City, the plaintiff was given a badge which had on it "Miller Brothers 101 Ranch, Marland, Oklahoma," and plaintiff testified that all employees on the 101 Ranch wore these badges.

The witness F. F. Ritthaler testified that he was county assessor, Noble county, Okla., and was asked the following questions (C.-M. 356):

"Q. Please state whether or not you have examined the records of your office, Mr. Ritthaler, for the purpose of ascertaining whether or not any personal property has been returned for taxation in this, Noble county, under any of the following names: 'The 101 Ranch Show Company,' 'The 101 Ranch Show Company, a corporation,' 'The 101 Ranch Show Company, a Delaware corporation,' 'Miller Brothers Real Wild West and Great Far East,' and 'Miller Brothers Real Wild West and Great Far East,' a corporation? A. No, sir. Q. You have not examined the records? A. Oh, yes; I have examined the records. Q. Please state whether or not there appears in the records of your office any returns of any property for taxation under any of the names above stated? A. No, I don't think you mentioned anything that was here. The only way it is here is: 'Miller Brothers 101 Ranch Trust.' "

The record (C.-M. 332 et seq.) discloses the individual state income tax reports of each of the Miller brothers, Joseph C. Miller, Sr., Zack T. Miller, and George L. Miller, for the years 1925 and 1926, during which time plaintiff was in the employ of the show. Each of the three Miller brothers' income tax reports for the years 1925 shows the following:

"Miller Brothers 101 Ranch Trust
"J. C. Miller—George L. Miller—Zack T. Miller, Owners. 1925 Income and Deductions.

"J. C. Miller
"Deductions.

"Loss operation 101 Ranch Wild West Show:"

The loss incurred by operation of the

show for 1925 is then set out. The income tax reports of the three Miller brothers for 1925 disclose a similar deduction for loss in operating the show for that year.

It appears clear to us that the beneficial ownership and control of the show for which plaintiff was working at the time of his injury, whether it be called "Miller Brothers 101 Ranch Show, a corporation of Delaware," as contended by defendants, or "Miller Brothers 101 Ranch Trust," designated by plaintiff as the defendant in this action, was at all times vested in the Miller brothers as individuals and partners.

In the case of Toelle v. Sells-Floto Shows Company (Kan.) 207 Pac. 849, a 14 year old boy while working for the Sells-Floto Shows sustained a severe injury. He brought suit for negligence of the show operators in causing said injury, and named Sells-Floto Shows Company, as defendant. The defense set up was that the plaintiff had sued the wrong party.

In rendering judgment the court said:

"If this circus property were a tract of valuable real estate, it would baffle an expert in the law of conveyancing to tell who holds the fee title at this time, although it is perfectly clear that Messrs. Bonfils and Tammen are and always have been the beneficial owners; but, since they have put forth such nominal title holders, one after the other, as suited their business convenience, with little or no regard to formalities of transfer, the Sells-Floto Shows Company, one of their corporate creatures, which has had more to do with the circus than any other, can be held to answer as a defendant in this lawsuit. In so holding we do not minimize or disparage the familiar principle of corporation law that formally organized and independently conducted corporations are separate legal entities, each having a separate legal status, although the organizers and stockholders may be the same persons."

We, therefore, hold that, under the facts and circumstances in the instant case, the jury was warranted in finding that the plaintiff was in the employ of the defendants, designated as such in the petition, and that plaintiff was in their employ at the time of his injury.

We have carefully examined the record in this case, and hold:

That plaintiff was in the employment of defendants, who were engaged in the show business at the time of the injury: that the injury occurred while plaintiff was assisting in unloading show wagons from defendants' flat cars at the town of Eugene,

Ore.; that the action was brought under the Employers' Liability Act of the state of Oregon: that said law gave to plaintiff a right of action; that plaintiff and defendants are both residents of the state of Oklahoma and under the jurisdiction of the courts of Oklahoma; that under the law of comity of states said action could be maintained in the state of Oklahoma; that the Oregon law in effect is not contrary to the laws of the state of Oklahoma, neither is the Oregon law against the public policy of the forum, and is not repugnant to justice or good morals, and that under the forms of procedure of the Oklahoma law substantial justice could be had; that no obviously prejudicial evidence was admitted by the court at the trial; that the evidence produced reasonably supports the verdict of the jury; that the instructions of the court were full and complete and fairly stated the law of the case; that the verdict in the case was not excessive.

The judgment of the trial court is affirmed.

MASON, C. J., and HUNT, CLARK, RILEY, and HEFNER, JJ., concur.

LESTER, V. C. J., concurs in conclusion.

SWINDALL, J., dissents.

ANDREWS, J., absent.