The CHEROKEE LABORATORIES, INC.,
a corporation, Plaintiff in Error,

v.

Lee ROGERS, Defendant in Error.

No. 40612.

Supreme Court of Oklahoma.

Jan. 12, 1965.

C. H. Rosenstein, Rucker, Tabor, Shepherd & Palmer, B. W. Tabor, O. H. "Pat" O'Neal, Tulsa, for plaintiff in error.

Doerner, Stuart, Moreland, Campbell & Saunders, Harry D. Moreland, Jack E. Campbell, Tulsa, for defendant in error.

WILLIAMS, Justice.

The question to be decided in this appeal is whether in an action for damages for wrongful death the law of the state where the fatal injury was inflicted authorizing such an action but limiting the amount of recovery in such a case to a specified maximum sum controls in determining the amount of damages recoverable in the case,

notwithstanding that the law of the forum contains no such limitation.

Defendant in error initiated the action from which this appeal arises against plaintiff in error in Tulsa County. Our continued reference to the parties is as they appeared in the trial court.

A recitation of the facts necessary to an understanding of the issues involved herein follows. Plaintiff's decedent on July 2, 1959, was one of the passengers aboard defendant's aircraft which took off from the Tulsa Municipal Airport on a trip to Indiana. Approximately forty-five minutes after take-off such aircraft's right engine quit and about thirty seconds later its left engine quit. The airplane then went into a spin and crashed near Republic, Missouri, killing plaintiff's decedent. When full the main tanks each contained forty-four gallons of gasoline and the auxiliary tanks each contained seventy-one gallons. When the aircraft left Tulsa on July 2, 1959, there were approximately thirty-two gallons in the main tanks. Such would be ample fuel for about forty-five minutes of flight. The auxiliary tanks contained enough fuel for approximately three hours and twenty-five minutes of flying. The flying time to the destination in Indiana was three hours. The pilot of the plane was advised as to the fuel supply some time prior to take-off. The procedure recommended for flying the type aircraft here involved is that fuel in the main tanks be used when taking off and until "cruising altitude" is reached and that at such altitude the selector valves which are "easily accessible" to the pilot be turned so that the aircraft will then be using gasoline from its auxiliary tanks.

An investigation of the aircraft after the crash showed that the fuel selector valve for the left engine was turned to the main tank and for the right engine it was turned to the "off position"; that in the left auxiliary tank there was a "large amount" of gasoline; that in the right auxiliary tank there was "some fuel"; that in the main tanks "there was no appreciable fuel"; that the right propeller was in "a full feathered position", i. e., not in a position to operate the plane.

Defendant demurred to the evidence and moved "that the [trial] court limit the right of recovery in this case to that expressed in the statutes of the State of Missouri as such statutes being introduced into evidence". The demurrer and motion were denied and the jury returned a verdict in favor of the plaintiff and against the defendant in the amount of $250,000.00. From judgment on such verdict and the overruling of its motion for a new trial, defendant appeals.

We deem defendant's proposition that "The trial court erred in failing to follow the Statutes of the State of Missouri and the decisions of this Court requiring recovery to be limited to $25,000.00" dispositive of this appeal.

Plaintiff argues that "The acts of negligence relied on are: (1) the diminishing of the fuel supply for the main engines, with or without notice to Garrick (pilot of the aircraft here involved); (2) Garrick's taking flight without heeding the information, or without making a check himself; (3) Garrick's failure to switch from main tanks to auxiliary tanks when air borne; and (4) flying until the fuel in his main tanks exhausted. One or more of these occurred in Oklahoma". For the reasons hereinafter discussed we do not agree with such contentions.

There was no evidence that Mr. Garrick did not have notice of the diminished fuel supply, but rather the evidence was that he was advised of the amount of fuel in the tanks of the airplane. There is no evidence that Mr. Garrick took flight without heeding the information or making a check himself. The evidence was that "a prudent pilot would have taken off" with the amount of fuel that was in the plane at take-off. There was evidence that the switch from the main tanks to the auxiliary tanks should have been made "Some time after take-off, the tanks or the selection of the tanks would be made in order to allow enough fuel to

land the airplane, drawing fuel from the auxiliary tanks." Other evidence concerning such a switch was that "* * * a normal situation would be to take off and climb to your desired altitude on the main tanks, then having reached that altitude, switch to the auxiliary tanks, proceed to your destination, and prior to landing, switch back and land on the main tanks." There was no evidence that the switch from the main tanks to the auxiliary tanks should have been made in Oklahoma. The evidence was of effect that the pilot failed to make the switch after the plane's two engines stopped while over Missouri. Other evidence was that after the engines stopped "* * * a normal prudent pilot could have performed in a better manner in that he could have avoided loss of control; he could have made some effort to land it in an open area".

Plaintiff does not set forth any evidence showing that defendant was guilty of any negligence occurring in Oklahoma nor have we in our study of the record found any such evidence.

Under the record in this case we are unable to say there was any evidence of effect that the proximate cause of the accident of which plaintiff complains was negligence occurring other than in the State of Missouri.

■ Section 537.090 of Vernon's Annotated Missouri Statutes provides:

"In every action brought under [wrongful death] section 537.080, the jury may give to the surviving party or parties who may be entitled to sue such damages, not exceeding twenty-five thousand dollars, as the jury may deem fair and just for the death and loss thus occasioned, with reference to the necessary injury resulting from such death, and having regard for the mitigating or aggravating circumstances attending the wrongful act, neglect or default resulting in such death".

In 92 A.L.R.2d Death—Damages—Limitation—Ruling Law § 3(a) pp. 1185, 1186, is the following language:

"It is the general rule, * * * that questions as to the measure, extent, or amount of damages recoverable in a wrongful death action are to be determined by the law of the place where the wrong causing the death occurred, this rule being generally founded upon the view that the measure, extent, or amount of damages for wrongful death pertains to a matter of the substance of the right to recovery, which should be governed by the law of the place wherein the cause of action arose."

Section 15(a) of 92 A.L.R.2d, p. 1218, supra, states:

"In each of the following cases, involving a death arising from a wrong done in a state other than the forum, it was held that the provision in the death statute of the foreign state limiting the amount of recovery in such a case to a specified maximum sum controls in determining the amount of damages recoverable in the case, notwithstanding that the death statute of the forum contains no such limitation".

Richards v. United States (1962) 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed.2d 492, is listed as one of the cases applying this rule. That case was an action by the personal representatives of passengers killed when an airplane crashed in Missouri when en route from Tulsa to New York City. The suit was brought in Oklahoma against the United States on the theory that the Government through the Civil Aviation Agency had negligently failed to enforce the terms of the Civil Aeronautics Act which prohibited certain practices then being used by the airline in its overhaul depot at Tulsa. In its opinion the U. S. Supreme Court at pages 592, 594 and 595 of the Supreme Court Reporter, said:

"* * * The general conflict-of-laws rule, followed by a vast majority of the States, is to apply the law of

the place of injury to the substantive rights of the parties * * *."

* * * * * *

"* * * Both the Federal District Court sitting in Oklahoma, and the Court of Appeals for the Tenth Circuit, have interpreted the pertinent Oklahoma decisions [Gochenour v. St. Louis-San Francisco R. Co., 205 Okl. 594, 239 P.2d 769; Miller v. Tennis, 140 Okl. 185, 282 P. 345; and Fenton v. Sinclair Refining Co., 206 Okl. 19, 240 P.2d 748], which we have held are controlling, to declare that an action for wrongful death is based on the statute of the place where the injury occurred that caused the death. Therefore, Missouri's statute controls the case at bar. * * *"

In the Restatement, Conflict of Laws, § 391, comment d is the following statement:

"The law of the place of wrong governs the amount of recovery for wrongful death as well as the right to recover. Thus, any limitation upon the amount imposed by the law of the place of wrong will be applicable to determine the maximum amount recoverable elsewhere."

25 C.J.S. Death, § 28, pars. a and b, pp. 1097, 1098 and 1101, is the following:

"Where an action for wrongful death is brought in a state other than the state in which the injury causing death occurred, it is the well-settled rule that matters relating merely to the remedy and procedure are governed by the lex fori, the law of the state in which the action is brought, but all matters of substantive law, such as the right of action, the nature of the right, and the availability to the defendant of particular defenses, are governed by the lex loci, the law of the state in which the injury occurred and where the cause of action arose. For the purpose of applying this general rule the lex fori determines what is matter of procedure and what matter of substance. The locus delicti, or the

place where the action arises, is the place where the injury is inflicted, the place where the fatal accident actually occurs, as distinguished from the place of the incipient negligence of defendant or the place where death occurred. * * *"

* * * * * *

"While there is some authority to the effect that the amount of damages recoverable pertains to the remedy only and is controlled by the lex fori, the weight of authority is to the effect that in an action for death, where the injury occurred out of the state in which the action is brought, the amount of recovery is governed by the lex loci and not by the lex fori. The measure of damages is governed by the statute in force at the time of death".

In Gochenour v. St. Louis San Francisco Ry. Co., 205 Okl. 594, 239 P.2d 769, 771, we said:

"* * * The cause of action as cast in plaintiff's pleadings, * * * pleads a cause of action for alleged wrongful death.

"No such cause of action existed at common law and it is only by virtue of the statutory law of Missouri that plaintiff's cause of action is established. * * *"

In the first paragraph of the syllabus in Hiskett v. Wells, Okl., 351 P.2d 300, we held:

"A substantive statute of limitation is a condition or limitation on the right sought to be enforced, and is generally a part of the right of action created by the same statute, which generally creates a new liability, authorizes an action to enforce it, and limits the time within which such action may be commenced".

At page 304 of the Pacific Second Reporter we said:

"In 34 Am.Jur., Limitation of Actions, Section 7, it is stated:

"'A statute of limitations should be differentiated from conditions which

are annexed to a right of action created by statute. A statute which in itself creates a new liability, gives an action to enforce it unknown to the common law, and fixes the time within which that action may be commenced, is not a statute of limitations. It is a statute of creation, and the commencement of the action within the time it fixes is an indispensable condition of the liability and of the action which it permits. The time element is an inherent element of the right so created, and the limitation of the remedy is a limitation of the right. * * * ' "

In the first and third paragraphs of the syllabus in the Gochenour case, supra, we held:

"An action for wrongful death is based on the statute of the place where the injury occurred that caused the death.

"The person by whom the action for wrongful death must be brought under Missouri statute is a part of the law governing the cause of action, and the limitation must be enforced in Oklahoma action for wrongful death caused by injuries sustained in Missouri".

In the Gochenour case, supra, at page 773 of the Pacific Reporter, this Court quotes from the case of Wheeler v. Southwestern Greyhound Lines, Inc., 207 Ark. 601, 182 S.W.2d 214, as follows:

" * * * It is beyond the power of the state to authorize any one to sue upon a cause of action arising under a foreign statute other than one permitted by such foreign statute".

In the case of Miller v. Tennis, 140 Okl. 185, 282 P. 345, we said:

" 'It is a well-settled rule * * * that the actionable quality of acts causing death or bodily injuries is to be determined by reference to the lex loci, rather than lex fori.' 56 L.R.A. 193. Again: 'It is also the rule that in enforcing such cause of action the court is to be governed, with reference to all matters pertaining to the substantive right, including defenses, by the lex loci, rather than the lex fori.' 56 L.R.A. 210.

"It is uniformly held by our courts that, when an injury occurs in one state and redress is sought in another state, the right of action must stand, if at all, on the statute of the state where the injury occurred: 'There is apparently no conflict in the decided cases on the point that so far as the right of action is concerned it must stand if at all on the statute of the state where the injury occurred and not of the state where the redress is sought.' 12 C.J. 454; Hamilton v. Hannibal, etc. R. Co., 39 Kan. 56, 18 P. 57; Oates v. Union Pac. R. Co., 104 Mo. 514, 16 S.W. 487, 24 Am.St.Rep. 348.

"In Louisville & N. R. Co., v. Williams, 113 Ala. 402, 21 So. 938, 939, the court said: 'The legal consequences of a person's acts are determined by the law obtaining when and where the acts are performed.' And again: 'The wrongful act causing the death having been committed in Tennessee,' the right of action must be determined by the law of that state."

In the second and third paragraphs of the syllabus in the case of Holder v. Holder, Okl., 384 P.2d 663, we held:

"The public policy of a state to permit the maintenance by one spouse of a suit against the other to recover damages for personal injuries does not require or authorize the courts of the state to ignore foreign law affecting substantive rights, where such law is different from that of the forum.

"A wife cannot maintain an action for personal injuries against her husband in the State of Oklahoma where the damages resulting in the personal injury occurred wholly in the State of Missouri and no recovery could be had therefor in Missouri".

Plaintiff relies heavily on the decisions in Kilberg v. Northeast Airlines, 9 N.Y.2d 34, 211 N.Y.S.2d 133, 172 N.E.2d 526, and Pearson v. Northeast Airlines, 2 Cir., 309 F.2d 553, cert. den. 372 U.S. 912, 83 S.Ct. 726, 9 L.Ed.2d 720.

Under the facts of the present case we are not called upon to indicate what our decision would be if the proof had shown specifically that some of the elements of negligence relied upon by plaintiff had occurred in Oklahoma.

In the absence of such proof, we decline to hold with the view that the public policy of this State pursuant to the theory of Section 7 of Article XXIII of our Constitution is such or so strong as to require a determination that the Missouri statutory limit of $25,000.00, recovery in a wrongful death action does not apply in a suit brought in Oklahoma.

Likewise, absent such proof, we decline to hold that under our concept of the conflicts of laws such Missouri statutory limit partakes of the nature of procedural rather than substantive law.

 By reason of the above recited authorities we determine that there being no right of action for damages in excess of $25,000.00 for the wrongful death of plaintiff's decedent in Missouri, under the facts in this case, plaintiff could not maintain an action in the State of Oklahoma for damages in excess of such amount. The largest amount for which judgment properly could have been awarded the plaintiff was $25,000.00. In Gallaspy v. Warner, Okl., 324 P.2d 848, is the following language:

"The concluding part of the opinion is Busboom v. Smith, 199 Okl. 688, 191 P.2d 198, 201, states:

"'The judgment of the trial court being clearly erroneous as to the amount awarded defendant, as hereinbefore pointed out, may be corrected by this court on appeal. Gray v. Cosden, 141 Okl. 183, 284 P. 288; Stumpf v. Stumpf, 173 Okl. 1, 46 P.2d 315.

* * *'"

The judgment of the trial court in the present action is erroneous and excessive as to the amount awarded plaintiff, as hereinbefore noted. Such judgment is therefore affirmed upon condition that within thirty days from finality of this opinion plaintiff shall file remittitur in the amount of $225,000.00; otherwise reversed with directions to grant defendant a new trial.

HALLEY, C. J., JACKSON, V. C. J., DAVISON, JOHNSON, BLACKBIRD, and IRWIN, JJ., and MYERS, S. J., concur.