Ethel **WILLIAMS**, as wife and next of kin of Schuyler Williams, Jr., deceased, Plaintiff,

Mary L. **Young**, as wife and next of kin of Charles Young, deceased, Plaintiff,

v.

**TEXAS KENWORTH COMPANY,** dba Oklahoma Kenworth Company, a Texas corporation, and General Tire & Rubber Company, an Ohio corporation, and General Tire Service, an Ohio corporation, Defendants.

Civ. A. Nos. 69–228, 69–236.

United States District Court
W. D. Oklahoma.

Dec. 18, 1969.

Don Manners and James Merz, of Manners & Merz, Oklahoma City, Okl., for plaintiffs.

William H. Wilson and Page Dobson, of Rhodes, Hieronymus, Holloway & Wilson, Oklahoma City, Okl., for defendant Texas Kenworth Co.

Clayton B. Pierce and John R. Couch, of Pierce, Duncan, Couch & Hendrickson, Oklahoma City, Okl., for defendants General Tire & Rubber Co. and General Tire Service.

## MEMORANDUM OPINION AND ORDER

EUBANKS, District Judge.

These are companion diversity cases. The plaintiffs and the amounts of damages sought are different; otherwise, the facts alleged and the questions of law raised by the pleadings are identical.

The petitions allege that the Cline Leasing Company of Cushing, Oklahoma, purchased a truck from defendant Texas Kenworth Company, garaged it in Cushing, Oklahoma, and tagged it in Oklahoma; that while the truck was being operated in the State of Missouri and was being driven by one Charles L. Young, deceased, (husband of plaintiff Mary L. Young in Cause No. Civil 69–236) with one Schuyler Williams, deceased, (husband of plaintiff Ethel Williams in Cause No. Civil 69–228) as a passenger therein, both of whom were residents of Oklahoma, the right front tire blew out as the truck approached a two ton Ford truck being driven by one Odis C. Kimmons causing loss of control of the truck; that the truck struck the rear of the vehicle being driven by Odis C. Kimmons and shattered the right front wheel on the Kenworth truck causing the body to drop to the pavement and ruptured the saddle tank full of fuel; and that the truck and plaintiffs' decedents were consumed in an intense fire. Each plaintiff is a resident of Oklahoma.

The petitions further allege that the several defendants, all foreign corporations qualified to do business in the State of Oklahoma, breached their respective warranties of fitness of the truck, wheel and tire by reason of which plaintiffs' decedents were burned to death

and that "as a direct and proximate result of the death of (plaintiffs' decedents) due to the breach of warranty on the part of the defendants and each of them" plaintiffs suffered losses respectively in the amounts of $193,200.00 and $260,400.00, for which judgments are prayed.

An amended petition was filed in Cause No. Civil 69–228 which is identical with the petition filed therein except that the amended petition alleges that the Kenworth truck was "purchased in either Oklahoma or Texas * * * the particulars of said transaction being unknown to the plaintiff but being well known to the defendants and each of them". No amended petition has been filed in Cause No. Civil 69–236.

The plaintiffs' decedents were domiciled in Oklahoma. The plaintiffs are residents of Oklahoma. The Kenworth truck was purchased in either Oklahoma or Texas. The purchaser was an Oklahoma firm. The truck was tagged and garaged in Oklahoma. The plaintiffs assert that the most significant contacts were in Oklahoma and that, therefore, plaintiffs are entitled to recover under (1) the Oklahoma Wrongful Death Act for injuries resulting from breach of warranties and (2) the provisions of the Uniform Commercial Code which Code is the law of Oklahoma.

Motions to dismiss were filed by all defendants in both cases and, in the alternative, defendant Texas Kenworth Company moves to strike from plaintiffs' prayer in each case all sums claimed in excess of $50,000.00 which is the maximum amount allowable under the Missouri Wrongful Death Act. The motions to dismiss assert that substantive rights of the plaintiffs, if any, arise under the law of the State of Missouri, the place of injuries, and that under the Missouri Wrongful Death Act no recoveries can be had by these plaintiffs. In short, the motions allege that the plaintiffs have no substantive rights under the *lex loci delicti* or law of the place of wrong governs here.

It appears that under the Missouri Wrongful Death Act the provision that the surviving spouse must institute an action for wrongful death of her spouse "within one year after such death" is an essential part of "the substantive right". V.A.M.S. § 537.080. The plaintiffs' decedents were burned to death in the accident on March 4, 1968. Ethel Williams filed action No. 69–228 Civil herein on June 4, 1969, while Mary L. Young filed action No. 69–236 Civil herein on June 11, 1969. Both actions were filed herein more than one year after the causes of action arose. Thus the motions to dismiss.

The complaints allege "that the defendants, and each of them, breached their warranty of fitness in the manufacture of their respective products". Then follow allegations as to the warranty or warranties of each defendant which was allegedly breached. The petitions further allege that "by reason of the breach of warranties express and implied on the part of the defendants jointly and severally, the (plaintiffs' decedents were) burned to death in the cab of the Kenworth truck." The petitions conclude by alleging that "as a direct and proximate result of the (deaths of the plaintiffs' decedents) due to the breach of warranty on the part of the defendants and each of them" plaintiffs have been damaged in the amounts alleged. At no point in the petitions is reference made to the laws of the State of Missouri.

The Rules of Civil Procedure, 28 U.S.C. Rule 8, require that the complaint state "a short and plain statement of the claim showing the pleader is entitled to relief." The Rule further provides that "all pleadings shall be so construed as to do substantial justice." The Court views the complaints as alleging actions for breach of warranties which resulted in wrongful deaths.

The plaintiffs argue that their rights are governed by the law of Oklahoma. They argue that they may institute the actions under the law of the forum which has the most substantial contacts and

that that State, the state of most significant contacts, is Oklahoma. The petitions allege that the contacts in Oklahoma are more substantial than those in Missouri in that the vehicle was purchased either in Oklahoma or Texas by Cline Leasing Company which is located in Cushing, Oklahoma, that the truck was tagged and garaged in Oklahoma, that each of the plaintiffs' decedents and their families were residents of Oklahoma at the time of the deaths, that the plaintiffs are residents of Oklahoma, that plaintiff Williams' decedent was employed by the Oklahoma based trucking company and that the only significant contact with the State of Missouri was the fortuitous event that the accident occurred in Missouri which resulted in death of plaintiffs' decedents.

The Court has concluded that the complaints state causes which are actionable under the laws of Oklahoma. This conclusion has been reached on the basis of (1) the recent trend of decisions in other states, especially Illinois and California, in automobile negligence cases resulting in death, that the law of the state which has the most significant relationship with the occurrence and with the parties to the occurrence governs and this more especially in factual situations in which the only contact with a foreign state is the alleged situs of the place of injury; (2) the increased criticisms of the rule that the law of the state wherein the wrong occurs control the substantive rights of the injured parties when the only relationship of that state is the fortuitous occurrence of the automobile accident occasioning injuries in that state; (3) the espousal of the most significant contacts rules in the tentative drafts of the Second Restatement of the American Law Institute on Conflict of Law; (4) the provision in the Oklahoma Uniform Commercial Code that where a transaction bears a reasonable relation to Oklahoma and to another state and the parties have not agreed as to the law of which state "shall govern their rights and duties" then "failing such agreement this Act applies to transactions

bearing an appropriate relation to this state"; and (5) the necessity of so construing the pleadings as to do substantial justice.

In support of their motions to dismiss, defendants rely on Gochenour v. St. L.-San Francisco Ry. Co., 205 Okl. 594, 239 P.2d 769 (1952), wherein the Supreme Court of Oklahoma held that an action for wrongful death is based on the statute of the place where the injury occurred that caused the death. Inasmuch as the place where the injury occurred was Missouri and the action was not maintainable there by an administrator of a decedent wrongfully killed the Court held that it could not be maintained by the administrator in Oklahoma. There were no allegations of any breaches of warranties. The Court said:

> The cause of action as *cast* in plaintiff's pleadings * * * pleads a cause of action for alleged wrongful death. 239 P.2d p. 771 (Emphasis supplied.)

The form in which the pleadings were cast was the decisive factor in Gochenour. In Cherokee Laboratories, Inc., v. Rogers, 398 P.2d 520 (Okl.1965), an action instituted in Oklahoma for wrongful death in plaintiff's decedent as a result of the crash of an airplane in Missouri following takeoff from the Tulsa airport, there was no allegation or evidence showing that the defendant was guilty of any negligence occurring in Oklahoma. Moreover, the action was not predicated on breach of warranties. There was no evidence, said the Court that the proximate cause of the accident of which plaintiff complains was negligence occurring other than in the State of Missouri. The Court, in holding that the law of Missouri controlled, observed that in Gochenour, supra, that "the cause of action as cast in plaintiff's pleadings * * * pleads a cause of action for alleged wrongful death" and then said:

> Under the facts of the present case *we are not called upon to indicate what our decision would be if* the proof had shown specifically that *some of the elements of negligence relied upon by*

*plaintiff had occurred in Oklahoma.* p. 525 (Emphasis supplied.)

We note that the Court reiterated, *"absent such proof"*, in the two paragraphs immediately following the above quotation. In short, the Court there noted the absence of significant contacts in Oklahoma.

The complaints herein, however, allege breaches by the defendants of the respective warranties on the truck, wheel and tire. The specifics as to each are spelled out in the complaints. There were no comparable allegations in Gochenour and Cherokee Laboratories, supra. An action for breach of a seller's warranty is a curious hybrid of tort and contract, unique in the law. And the breach of an implied warranty by a seller is a wrongful act. Ryan v. Progressive Grocery Stores, Inc., 255 N.Y. 388, 175 N.E. 105, 74 A.L.R. 339.

States which follow the general rules and permit an action for breach of implied warranty to be brought in tort have held that such actions may be brought under their wrongful death acts. (Dagley v. Armstrong Rubber Company, [CA 7, 1965] 344 F.2d 245)

The plaintiffs argue that the actions are controlled by the Oklahoma Wrongful Death Act because the most substantial contacts or relationships with the occurrence and with the parties to the occurrence occurred in the State of Oklahoma. The Court again notes that the complaints allege that the only contact with the State of Missouri is the alleged situs of the decedents' death, a fortuitous occurrence, whereas the more significant alleged relationships with Oklahoma were the purchase of the truck in either Oklahoma or Texas, the tagging and garaging of the truck in Oklahoma, use of Oklahoma as base of operations of truck, and the domicile of plaintiffs and plaintiffs' decedents in Oklahoma. The allegation that the most significant relationships with the accident and with the parties to the accident were in the State of Oklahoma is not denied by the defendants.

Ingersoll v. Klein, 106 Ill.App.2d 330, 245 N.E.2d 288 (1969) appears to be directly in point. It involved an action for wrongful death in Illinois where the death had occurred in Iowa. The Court held that, where the parties were all residents of Illinois and no citizen of Iowa was involved, Illinois as the forum state and as the domicile of potential beneficiaries had more significant interest in recovery of damages for wrongful death than Iowa whose only interest arose from the fact the death of plaintiff's decedent had occurred in Iowa and that the action was governed by Illinois law. In the course of the opinion the Court said:

We consider the well pleaded facts admitted by the motion to be as follows: The plaintiff as administratrix is a resident of Illinois and the Estate is pending in Illinois; the deceased was a resident of Illinois at the time of his death; the accident occurred in that part of the Mississippi River in the territorial jurisdiction of the State of Iowa * * *; the suit has been brought in the Illinois courts for wrongful death of the decedent; the defendants are Illinois residents. * * * (Witnesses are Illinois residents and) deceased worked in Illinois and all of the next of kin of decedent were Illinois residents.

We are of the opinion that the record establishes that Illinois has the most significant relationship with the occurrence and with the parties to the occurrence, while the only contact with the State of Iowa is the alleged situs of the decedent's death; and that the application of the Illinois Wrongful Death Act with reference to its residents should not offend the comity of interstate relationships between the states of Illinois and Iowa. While we are urged * * * to apply the mechanical rule of the *lex loci delicti*, for the reasons which we have indicated in the majority opinion in Graham v. General U. S. Grant Post No. 2665, 97 Ill.App.2d 139, 239 N.E.2d 856 (1968), we are not so inclined. We believe that the choice influencing considerations which we there referred to, when ap-

plied to the admitted facts in the case, dictate that the cause of action here should be determined under Illinois law.

The parties are all residents of Illinois and no citizen of Iowa is involved so that no harm is involved to the interests of Iowa by the selection of applicable law. The law of the forum differs from that of Iowa in the areas of recovery limits, nature of the proof and owners liability, and Illinois therefore advances its interest in applying its policy determinations to its residents appearing in its courts. * * * Illinois, as both the forum state and the domicile of potential beneficiaries, has a more significant interest in the recovery of damages for wrongful death than does Iowa, whose only interest arises from the fortuitous occurrence of the accident in that state.

The Illinois Appellate Court had said in Graham v. General U. S. Grant Post No. 2665, supra, that:

Our fast changing and moving era with its attendant new social and economic problems, requires a re-evaluation of the choice of law rule in multistate tort situations, to the end that such rule will be made for the people and the problems of today. The nice tidy provision of uniformity and simplicity should not prevail over elementary choice-influencing considerations, public policy, decency and justice. 239 N.E.2d p. 864.

While numerous other cases of like holding, both state and federal, might be cited, we view it as sufficient to cite and quote from two of them. In Reich v. Purcell, 67 Cal.2d 551, 63 Cal.Rptr. 31, 432 P.2d 727 (1967) the opinion was written by Mr. Chief Justice Traynor. Actions were brought in the California courts for wrongful deaths of Ohio residents who had been killed in Missouri in collision with an automobile owned and operated by a California resident. The trial court had held that the Missouri limitation of damages to a fixed maximum was applicable and entered judgment accordingly. The Supreme Court of California *reversed* however, and held that the law of Ohio, which did not limit recovery to a fixed maximum was applicable. In so holding, Mr. Chief Justice Traynor said:

For many years courts applied the law of the place of the wrong in tort actions regardless of the issues before the court, e. g., whether they involved * * * applicability of a wrongful death statute * * * or other rules determining whether a legal injury had been sustained. (citations omitted) It was assumed that the law of the place of the wrong created the cause of action and necessarily determined the extent of the liability * * *. In a complex situation involving multi state contacts, however, no single state alone can be deemed to create exclusively governing rights. (citations omitted) The forum must search to find the proper law to apply based upon the interests of the litigants and the involved states. Such complex cases elucidate what the simpler cases obscured, namely, that the forum can only apply its own law. (citations omitted) When it purports to do otherwise, it is not enforcing foreign rights but choosing a foreign rule of decision as the appropriate one to apply to the case before it. Moreover, it has not been demonstrated that a choice of law resulting from a hopeless search for a governing foreign law to create a foreign vested right may defeat the legitimate interest of the litigants and the states involved. (citations omitted)

Accordingly, when application of the law of the place of the wrong would defeat the interests of the litigant and of the states concerned, we have not applied that law.

* * * * * *

Ease of determining applicable law and uniformity of rules of decision, however, must be subordinated to the objective of proper choice of law in conflict cases, i. e., to determine the law that most appropriately applies to the

issue involved. * * * The law of the place of wrong * * * no longer affords even a semblance of the general application that was once thought to be its great virtue. We conclude that the law of the place of the wrong is not necessarily the applicable law for all tort actions brought in the courts of this state. As the forum we must consider all of the foreign and domestic elements and interests involved in this case to determine the rule applicable.

In Farber v. Smolack, 20 N.Y.2d 198, 282 N.Y.S.2d 248, 229 N.E.2d 36 (1967) the Court of Appeals of New York held that the New York statute, rendering negligence of automobile driver attributable to owner who had given driver express permission to operate automobile, was applicable to an action arising out of a North Carolina fatal accident rather than the North Carolina statute, where (1) all people involved were citizens and domiciliaries of New York, (2) the automobile was registered in New York, (3) arrangements for its use had been made in New York, and (4) it was on its way back from Florida to New York when the accident occurred in North Carolina. The Court there said:

Accordingly, when a fatal accident occurs out of State and New York is, as here, the jurisdiction having "the most significant relationship" with the issue presented * * * our wrongful death statute determines the rights of the victim's survivors. * * * To the extent that earlier decisions declined to give extraterritorial effect to the statute, they are overruled. 229 N.E. 2d p. 40

The Legislature of Oklahoma, notwithstanding the holdings of the Supreme Court of Oklahoma in Gochenour, supra, in 1952, in enacting the Uniform Commercial Code provided that the Code is applicable "to transactions bearing an appropriate relation" to Oklahoma where the parties have not fixed the jurisdiction whose law is to govern. Title 12A, Section 1–105, expressly provides:

* * * when a transaction bears a reasonable relation to this state and also to another state or nation the parties may agree that the law either of this state or of such other state or nation shall govern their rights and duties. Failing such agreement this Act applies to transactions bearing an appropriate relation to this state.

The Oklahoma Code Comment immediately following reads in pertinent part as follows:

The provision providing that this act applies to transactions bearing an "appropriate relation" to this state is new, and probably changes the law in Oklahoma. (Emphasis supplied.)

The Uniform Commercial Code Comment, following the Oklahoma Code Comment, reads in pertinent part as follows:

(3) Where a transaction has significant contacts with a state which has enacted the Act and also with other jurisdictions, the question what relation is "appropriate" is left to judicial decision. In deciding that question, the court is not strictly bound by precedents established in other contexts.

The Court is indebted to counsel for exhaustive briefs and for supplemental briefs which were supplied at the request of the Court. The research, however, has extended well beyond the authorities cited by counsel. Pertinent annotations, which appear at 76 A.L.R.2d 130–152 (1960); 77 A.L.R.2d 1266–1290 (1961); and 92 A.L.R.2d 1180–1223 (1962) were helpful. It is unnecessary to extend this opinion with citations from the writings of the critics of the rule of lex loci deliciti. Nor need we burden the opinion with lengthy quotations from the tentative drafts of the Second Restatement of the American Law Institute on Conflict of Laws. These materials have been studied by the Court. They are available to counsel and to readers.

It is ordered, That the Motions to Dismiss and the Motions to Strike be, and the same are hereby denied.

It is further ordered, That the Clerk of this Court furnish counsel of record with a copy hereof.