Dorothy RICHEY, Appellant,

v.

CHEROKEE LABORATORIES, INC.,
Appellee.

Edith Abell WOOD, Appellant,

v.

CHEROKEE LABORATORIES, INC.,
Appellee.

Nos. 44210, 44277.

Supreme Court of Oklahoma.

Oct. 30, 1973.

Harry L. Seay III, Sam P. Daniel, Jr., Doerner, Stuart, Saunders, Daniel & Langenkamp, Tulsa, for appellants.

Rucker, Tabor, McBride & Hopkins, B. W. Tabor, M. Darwin Kirk, Tulsa, for appellee.

WILLIAMS, Vice Chief Justice.

In these two cases, plaintiffs appealed from respective trial court judgments in their favor in the amount of $25,000 each in wrongful death actions arising out of the same airplane crash near Republic, Missouri, on July 2, 1959. At the time of the crash, the decedents, officers or employees of defendant Cherokee Laboratories, Inc., were passengers in a plane owned by defendant which was then being flown on a business trip from Tulsa to Columbus, Indiana.

We previously (in 1965) have decided a case involving the same accident with which we herein are concerned. For reasons not stated in the record, trial of the cases from which the instant appeals arose was delayed until 1970.

The same conflict of laws question is presented in both appeals: whether, under the circumstances shown to exist, the Missouri wrongful death statutes, with their limitation of the amount recoverable as damages to $25,000, are applicable.

In both of these cases the trial court determined in advance of trial that the Missouri limitation was applicable. In *Wood*, the defendant stipulated that plaintiff's damages exceeded $25,000, and the issue of liability only was submitted to the jury, which found for plaintiff. In *Richey*, one month after the jury trial in *Wood*, defendant filed a motion for summary judgment in plaintiff's favor in the amount of $25,000, which was sustained.

The facts of the accident involved in each of the three cases are stated in the former opinion. See Cherokee Laboratories, Inc. v. Rogers, Okl., 398 P.2d 520. In that case a different Tulsa County trial judge determined that the $25,000 limitation on the amount recoverable was not applicable, under the evidence presented, and rendered judgment for plaintiff in a much larger amount. This Court held to the contrary on appeal and ordered the remittitur of an amount sufficient to reduce the judgment for plaintiff to $25,000. The parties in the appeals now before us agree that all of the evidence in *Cherokee* was also introduced in the cases now on appeal. Defendant argues that the evidence in all three cases was the same and that for that reason, the holding of this Court in *Cherokee* is determinative of the question presented in *Wood* and *Richey*.

 Plaintiffs, while conceding that until fairly recent years the almost universally accepted rule in this situation was that the law of the place of the tort ("lex loci delicti") controls, quite frankly devote most of their briefs to an appeal to this Court to change the Oklahoma conflicts of laws rule in that regard and send these cases back for trial under the Oklahoma wrongful death statutes on the issue of damages only, with no limitation upon the amount recoverable. Of course any attempt by our Legislature to effect the same change and make it applicable to these cases would plainly be unconstitutional. Nor, ordinarily, will retroactive effect be given a court opinion dealing with substantive rights. The rule of law announced in *Cherokee* governs here.

Plaintiffs argue that because of certain additional evidence in the cases now before us which was not presented in *Cherokee,* the holding of this Court in that case is not determinative of the question presented in the cases now before us.

 The evidence to which they refer (either presented, stipulated to or offered and rejected) would, they argue, have justified a jury conclusion in these cases that at least one act of negligence which was, or contributed to, the proximate cause of the injuries, occurred in Oklahoma. The trial court was of the view that this alleged act of negligence (failure to switch from the main tanks to the auxiliary tanks in Oklahoma) was a mere condition and that other acts occurring later were the proximate cause of the accident in question. We agree.

In the case of Hunt v. Firestone Tire & Rubber Co., Okl. (1968) 448 P.2d 1018, this Court in the syllabus stated:

"2. The proximate cause of any injury must be the efficient cause which sets in motion the chain of circumstances leading to the injury; if the negligence complained of merely furnishes a condition by which the injury was possible and a subsequent independent act caused the injury, the existence of such condition is not the proximate cause of the injury."

See also City of Okmulgee v. Hemphill (1938) 183 Okl. 450, 83 P.2d 189, 190, cited with approval in O. G. & E., etc. v. Butler (1942) 190 Okl. 393, 124 P.2d 397, 399; and Meyer v. Moore, Okl. (1958) 329 P.2d 676, 681.

We are of the view that the factual distinction sought to be made between *Cherokee* and the cases now before us does not exist. There (Cherokee Laboratories, Inc.

v. Rogers, Okl. (1965) 398 P.2d 520, supra) in the syllabus, we said:

"Absent evidence demonstrating occurrence of negligence in Oklahoma sufficient to amount to or substantially contributing to proximate cause of accident causing plaintiff's decedent's death, as result of an accident in the State of Missouri, the amount of plaintiff's recovery in action in Oklahoma for wrongful death of husband under Missouri statutes creating cause of action for wrongful death and authorizing recovery of not to exceed $25,000.00 therefor, is limited by the amount fixed in such Missouri statutes."

Since in *Cherokee,* the Missouri law was applied and since the principal factual distinction urged here was both found by the trial court and is determined by this Court to be in the nature of a mere condition and not a part of the proximate cause of the accident involved, we also apply that law here as all plaintiffs' decedents were fatally injured in the same occurrence. Under the facts and circumstances of the present cases hereinabove recited, we are of the view that no act of negligence that amounted to a part of the proximate cause of the accident involved was shown to have occurred in Oklahoma and that therefore the judgments of the trial court should be upheld.

Affirmed.

DAVISON, C. J., and IRWIN, BERRY and BARNES, JJ., concur.

HODGES, LAVENDER, SIMMS and DOOLIN, JJ., concur specially.

DOOLIN, Justice (specially concurring).

If I correctly interpret the majority opinion, it has limited Plaintiff's recovery in these cases as in the companion case, Cherokee Laboratories, Inc. v. Rogers, 398 P.2d 520 (1965), to the Missouri limitation for wrongful death in effect at the time of the accident ($25,000.00), applying the rule in conflict of law termed "lex loci delicti." My colleagues further point out and I concur in their holding that the Plaintiff's additional evidence was rightfully held by the trial court to create a "mere condition", and not the "proximate cause" of the accident.

Although the rationale of the majority opinion is not stated as such, I believe it to be the time-honored doctrine of "Stare Decisis." I am further convinced that to allow a different standard of recovery in these cases or the possibility of an unlimited recovery under Oklahoma's wrongful death statute would be unjust if not invidiously discriminatory in view of the facts and circumstances of these and the companion cases.

It is my opinion that the doctrine of "lex loci delicti" in interstate tort cases is outmoded and has served its day. The Appellant has pointed out in his brief that since our decision in *Rogers*, supra, a number of states [1] have abandoned the purely mechanical or wooden application of "lex loci de-

---

1. Alaska: Armstrong v. Armstrong, 441 P.2d 699 (Alaska 1968); Arizona: Schwartz v. Schwartz, 103 Ariz. 562, 447 P.2d 254 (1968); California: Reich v. Purcell, 67 Cal.2d 551, 63 Cal.Rptr. 31, 432 P.2d 727 (1967); District of Columbia: Myers v. Gaither, 232 A.2d 577 (D.C.App.1967); Idaho: Rungee v. Allied Van Lines, Inc., 92 Idaho 718, 449 P.2d 378 (1968); Illinois: Ingersoll v. Klein, 106 Ill.App.2d 330, 245 N.E.2d 288 (1969); Wartell v. Formusa, 34 Ill.2d 57, 213 N.E.2d 544 (1966); Indiana: Witherspoon v. Salm, 142 Ind.App. 655, 237 N.E.2d 116 (1968); Watts v. Pioneer Corn Company, 342 F.2d 617, (7th Cir. 1965); Iowa: Fabricus v. Horgen, 257 Iowa 268, 132 N.W.2d 410 (1965); Ken-

tucky: Wessling v. Paris, 417 S.W.2d 259 (Ky.1967); Maine: Beaulieu v. Beaulieu, 265 A.2d 610 (Maine 1970); Minnesota: Balts v. Balts, 273 Minn. 419, 142 N.W.2d 66 (1966); Mississippi: Mitchell v. Craft, 211 So.2d 509 (Miss.1968); Missouri: Kennedy v. Dixon, 439 S.W.2d 173 (Mo.1969); New Hampshire: Clark v. Clark, 107 N.H. 351, 222 A.2d 205 (1966); New Jersey: Mellk v. Sarahson, 49 N.J. 226, 229 A.2d 625 (1967); Oregon: Casey v. Manson Construction and Engineering Company, 247 Or. 274, 428 P.2d 898 (1967); Rhode Island: Woodward v. Stewart, 104 R.I. 290, 243 A.2d 917 (1968); Wisconsin: Wilcox v. Wilcox, 26 Wis.2d 617, 133 N.W.2d 408 (1965).

licti". We quote from the Appellant's brief:

"What was a trickle in January, 1967, when *Rogers* was decided is today an avalanche of repudiation of *lex loci delicti*. Why have state supreme courts and commentators come down so heavily against the rule? There are many reasons; one of the chief reasons was cited in Griffith v. United Airlines, Inc., [416 Pa. 1] 203 A.2d 796 (Pa.1964):

'The basic theme running through the attacks on the place of the injury rule is that wooden application of a few overly simple rules, based on the outmoded "vested rights theory", cannot solve the complex problems which arise in modern litigation and may often yield harsh, unnecessary, and unjust results.'

In Wilcox v. Wilcox, [26 Wis.2d 517] 133 N.W.2d 408 (Wis.1965), the Wisconsin Court pointed out the injustice of applying the rule to a case such as this:

'All of the commentators in all of the cases that end up in disagreement with the unbending application of *lex loci delicti*, have a common thread that runs through the skein of rationale, and that thread is that the place of the occurrence of an unintentional tort is fortuitous, and it is by mere happenstance that the *lex loci* state is concerned at all.'

* * * * But in recent years, courts and legal commentators who have made it their business to look afresh at *lex loci delicti* agree that the doctrine of *lex loci delicti* is not merely a neutral point of reference, but is positively harmful, unjust, and ought to be expunged from the law."

I would therefore lay to rest the doctrine of "lex loci delicti" in interstate torts actions for Oklahoma and would hold, prospectively, that Oklahoma decisions in the field of interstate tort will be governed by the principle set forth in the Restatement (Second) Conflicts of Law as amended in 1968, to-wit:

"Section 379 The General Principle.

(1) The local law of the state which has the most significant relationship with the occurrence and with the parties determines their rights and liabilities in tort.

(2) Important Contacts that the forum will consider in determining the state of most significant relationship include:

(a) The place where the injury occurred,

(b) The place where the conduct occurred,

(c) The domicile, nationality, place of incorporation and place of business of the parties, and

(d) The place where the relationship, if any, between the parties is centered.

(3) In determining the relative importance of the contacts, the forum will consider the issues, the character of the tort, and the relevant purposes of the tort rules of the interested states."

That the method of prospective overruling suggested in this opinion may be novel or new in Oklahoma is not denied, but the authority for such a manner and method of prospective overruling is supported by no less authority than Great Northern Ry. Co. v. Sunburst Refining Co.,[2] 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360, where Mr. Justice Cardozo says:

"This is not a case where a court in overruling an earlier decision has given to the new ruling a retroactive bearing, and thereby has made invalid what was valid in the doing. Even that may often be done, though litigants not infrequently have argued to the contrary. . . . This is a case where a court has refused to make its ruling retroactive, and the novel stand is taken that the constitution of the United States is infringed by the refusal.

We think the federal constitution has no voice upon the subject. A state in defin-

2. Sunburst Refining Co. v. Great Northern Ry. Co., 91 Mont. 216, 7 P.2d 927 (1932).

ing the limits of adherence to precedent may make a choice for itself between the principle of forward operation and that of relation backward. It may say that decisions of its highest court, though later overruled, are law none the less for intermediate transactions. Indeed there are cases intimating, too broadly . . . that it *must* give them that effect; but never has doubt been expressed that it *may* so treat them if it pleased, whenever injustice or hardship will thereby be averted."

We have searched the Oklahoma Constitution and have found no provision therein which would prohibit the prospective manner of overruling that we choose to follow.[3] I therefore would affirm the trial court in the instant case, but would overrule prospectively the application of "lex loci delicti" in all interstate tort cases in Oklahoma.

I am authorized to state that Justices HODGES, LAVENDER and SIMMS concur in the views herein expressed.

---

3. See: Schaefer, Chief Justice of the Supreme Court of Illinois, "The Control of 'Sunburst's' Techniques of Prospective Overruling", 42 NYU L.Rev. 631; Keeton, Professor of Law Harvard School, "Creative Continuity in the Law of Torts", 75 Harvard L.Rev. 490; Schaefer, "Chief Justice Traynor and the Judicial Process", 53 Calif.L.Rev. 17; Schaefer, "Precedent and Policy", 34 Chicago L.Rev. 17; Levy, Lecturer in Law, Columbia University, "Realist Jurisprudence and Prospective Overruling," 109 U. of Pa.L.Rev. 56; Cardozo, The Nature of the Judicial Process.