**Theodore J. BRICKNER, Jr., M.D., Petitioner,**

**v.**

**David S. GOODEN et al., Respondents.**

**No. 47217.**

Supreme Court of Oklahoma.

July 16, 1974.

Green, Feldman & Hall by Wm. S. Hall, Tulsa, for petitioner.

Young & Peaster by Richard L. Peaster, Tulsa, for respondents.

IRWIN, Justice:

Respondents, in three separate actions, sought to recover damages against the peti-

tioner for personal injuries resulting from an airplane crash near Mexico City, Republic of Mexico. Respondents alleged they were passengers in the airplane which was owned, operated, under the exclusive control of, and being flown by petitioner, and that the crash followed from the negligence of the petitioner in the operation and control of the airplane. None of the negligence alleged occurred elsewhere than in the Republic of Mexico.

Certain pleadings filed in the trial court placed in issue whether the rights and liabilities of the parties should be determined by the laws of Oklahoma or the laws of Mexico. The trial court held that the parties' rights and liabilities would be determined under Oklahoma Laws because Oklahoma had the most significant relationship with the occurrence and with the parties.

The trial court sustained petitioner's motion to certify its Interlocutory Order for review by this Court. The question certified is:

"In tort actions, is the law of the place wherein the cause of action arose controlling on the substantive rights of the parties, or does the local law of the state which has the most significant relationship with the occurrence and with the parties determine the substantive rights and liabilities of the parties?"

Petitioner contends that the doctrine of "lex loci delicti" applies, i. e., that the law of the place of the injury or where the cause of action arose, determines the substantive rights and liabilities of the parties, and the substantive law of the Republic of Mexico is applicable in the case at bar.

Respondents contend that the substantive law of Oklahoma is applicable, i. e., the substantive law of the place having the most significant relationship with the occurrence and with the parties. In this connection, respondents point out that all the parties at all times material to this action were and still are residents of Oklahoma; the aircraft was hangared in Oklahoma

where it was registered; and the trip originated and was to end in Oklahoma.

In Cherokee Laboratories, Inc. v. Rogers (1965), Okl., 398 P.2d 520, we held:

"Absent evidence demonstrating occurrence of negligence in Oklahoma sufficient to amount to or substantially contributing to proximate cause of accident causing plaintiff's decedent's death, as result of an accident in the State of Missouri, the amount of plaintiff's recovery in action in Oklahoma for wrongful death of husband under Missouri statutes creating cause of action for wrongful death and authorizing recovery of not to exceed $25,000.00 therefor, is limited by the amount fixed in such Missouri statutes."

Subsequent to the promulgation of the Cherokee case [398 P.2d 520] in 1965, this Court decided Richey v. Cherokee Laboratories, Inc., and Wood v. Cherokee Laboratories, Inc., Okl., 515 P.2d 1377, in 1973. All three cases arose out of the same occurrence and all involved actions for wrongful death. We held the rule of law announced in the 1965 case [398 P.2d 520], governed the two cases decided in 1973 [515 P.2d 1377]. The accident here involved occurred in 1971.

Four Justices of our Court in 515 P.2d 1377, in a special concurring opinion, were of the same view as the majority, that since the same occurrence and accident formed the basis for each of the three Cherokee cases, a different standard of recovery should not be allowed in the three cases. However, they expressed their views that we should overrule prospectively the application of the doctrine of "lex loci delicti" in all multi-state tort actions and apply the local law of the state which had the most significant relationship with the occurrence and the parties in determining their rights and liabilities. The principles advocated in the special concurring opinion, in substance, are set forth in the Restatement [second] Conflicts of Law, §

145, (proposed in the 1968 Official Draft), which provides:

"(1) The rights and liabilities of the parties with respect to an issue in tort are determinated by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

"(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

"(a) the place where the injury occurred,

"(b) the place where the conduct causing the injury occurred,

"(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and

"(d) the place where the relationship, if any between the parties is centered.

"These contacts are to be evaluated according to their relative importance with respect to the particular issue."

The choice of law principles set forth in § 6, supra, provide that:

"(1) a court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

" * * *."

Considering the circumstances presented, in connection with the change in decisional law in other jurisdictions hereinafter discussed, and the special concurring opinion of four Justices in 515 P.2d 1377, in 1973, we find it only appropriate that we should re-examine whether this Court should continue to follow the doctrine of "lex loci delicti" regardless of the particular issues involved.

When this Court promulgated the Cherokee case in 1965, the general rule as to measure, extent, or amount of damages recoverable in a wrongful death action was to be determined by the law of the place where the wrong causing the death occurred. This rule was generally founded upon the view that the measure, extent or amount of damages for wrongful death pertained to a matter of substance of the right to recover and should be governed by the law of the place where the cause of action arose. 92 A.L.R.2d 1180 (1963). In the A.L.R. Annotation, a footnote stated that the above rule is supported by the Restatement, Conflicts of Law, § 391; and also § 142, of the same Restatement which provides, "The measure of damages for a tort is determined by the law of the place of wrong."

Dissatisfaction with the mechanical application of the rule that the substantive rights of the parties to a tort action are automatically fixed by, and inexorably governed by the law of the place where the wrong occurred, has in recent years led a number of courts to reject the rule of the place of the wrong [lex loci delicti] completely. 29 A.L.R.3d 603 (1970). Therein, it is stated at page 623, that: "In a number of recent multi-state tort actions, the courts have discarded the rule of the place of the wrong as the sole determinant of the law governing the parties substantive rights, and applied a rule that requires of the forum court analysis of all facts and factors involved to determine what law is most appropriate under the particular analytical theory or process employed to govern the parties' rights and liabilities with respect to any issue in tort."

Several cases cited and discussed in 92 A.L.R.2d 1180 and 29 A.L.R.3d 603 and its 1973 Supplement indicate that some states have not followed the modern trend, but have retained their old rule of lex loci delicti under a theory either that no compelling reason was shown for the change, or uncertainty in determining the applicable law would result, or the "dominant contacts" principle could not be uniformly applied.

The Supreme Court of California in Riech v. Purcell (1967), 67 Cal.2d 551, 63 Cal.Rptr. 31, 432 P.2d 727, in discussing

this possible uncertainty and lack of uniformity, said:

"Ease of determining applicable law and uniformity of rules of decision, however, must be subordinated to the objective of proper choice of law in conflict cases, i. e., to determine the law that most appropriately applies to the issue involved (see Leflar, Choice—Influencing Considerations In Conflicts of Law (1966) 41 N.Y.U.L.Rev. 267, 279–282). Moreover, as jurisdiction after jurisdiction has departed from the law of the place of the wrong as the controlling law in tort cases, regardless of the issue involved [authorities cited]· that law no longer affords even a semblance of the general application that was once thought ·to be its great virtue. We conclude that the law of the place of the wrong is not necessarily the applicable law for all tort actions brought in the courts of this state. [Citing decisions], and other cases to the contrary are overruled."

The Reich case involved actions to recover for the wrongful deaths of Ohio residents killed in Missouri after a collision with an automobile owned and operated by a California resident. The primary conflicts of law issue was whether Missouri law (with a $25,000.00 limitation on damages) or Ohio law (with no damage limitation) was applicable. The California court recognized that Missouri would be concerned with conduct within her borders, and, as to this conduct, Missouri would have the predominant interest over the other two states involved, but found that limitations of damages for wrongful death have little or nothing to do with conduct, and that giving effect to Ohio's interest in affording full recovery to Ohio residents would not conflict with any substantial interest of Missouri. In discussing the latter, the court pointed out that no party to the litigation was from Missouri. The Ohio law not the Missouri law was then held applicable to the question of damages.

In an earlier decision, Emery v. Emery (1955), 45 Cal.2d 421, 289 P.2d 218, Cali-

fornia's Supreme Court considered an action by unemancipated minors against their father for personal injuries sustained in an automobile accident in Idaho. The parties were all residents of California. In effect, the California Court said that the Idaho law would be controlling in determining whether the defendant father would be liable for his conduct in driving the automobile; but in determining the minor's disabilities to sue and defendant father's immunity from suit because of the family relationship, the law of the family domicile [California] would be applicable. The court noted that it is undesirable that the rights, duties, disabilities, and immunities conferred or imposed by the family relationship should constantly change as members of the family cross state boundaries during temporary absence from home.

Schwartz v. Schwartz (1968), 103 Ariz. 562, 447 P.2d 254, involved an action by a wife against her husband for injuries sustained in an automobile accident in Arizona. They were residents of New York and were in Arizona for a brief vacation at the time of the accident. One of the issues presented was whether the New York law [which would allow the wife to sue the husband] or the Arizona law [which would not allow the action] would be applicable. In discussing this issue, the Court said:

"Had this issue arisen in the very recent past the response of the overwhelming majority of American courts would have been automatic: since the accident occurred in Arizona its law must be applied to all substantive aspects of the case. Enshrined in the Restatement of Conflict of Laws, this theory of lex loci delicti has provided a choice of law rule in tort cases throughout the United States for nearly three decades. However, of late, the assaults on the citadel of lex loci have occurred with increasing frequency. The status of the old lex loci rule is succinctly described in Clark v. Clark, 107 N.H. 351, 222 A.2d 205 (1966):

"'That old rule is today almost completely discredited as an unvarying guide

to choice of law decision in all tort cases * * *. No conflict of laws authority in America today agrees that the old rule should be retained. * * * No American court which has felt free to re-examine the matter thoroughly in the last decade has chosen to retain the old rule. * * * It is true that some courts, even in recent decisions, have retained it. * * * But their failure to reject it has resulted from an unwillingness to abandon established precedent * * * not to any belief that the old rule was a good one.' 222 A.2d at 207.

"This movement away from lex loci culminated in 1968 in its rejection by the Restatement (Second) of Conflict of Laws. While the majority of jurisdictions have yet to repudiate the lex loci delicti rule, we feel that the recent, better-reasoned decisions evidence the trend away from its application. * * *."

The court held that the wife's capacity to sue her husband in tort would be determined by the laws of New York, the domicile of the parties; but that the laws of Arizona would be applicable in determining the husband's negligence. In other words, the Arizona Court applied the New York law to one issue in the case; and the Arizona law to another issue.

First National Bank in Fort Collins v. Rostek (1973), Colo., 514 P.2d 314, was a wrongful death action with respect to a fatal airplane accident in South Dakota, involving a husband as host pilot and his wife as guest passenger. The husband, wife, and the children [for whom the death action was brought] were all residents of Colorado. The court held that the rights and liabilities of the parties were governed by the laws of Colorado which was the place where both the guest passenger and the host passenger were domiciled and the airplane was registered. Colorado adopted the general choice-of-law rule by applying the law of the state with the most significant relationship with the occurrence

and the parties in the multi-state tort controversy.

The Colorado Court said that in the last ten years, while several states have retained adherence to the broad "lex loci delicti" rule, a greater number of jurisdictions have abandoned or rejected it in favor of a more flexible and rational choice of law approach in multistate tort cases. In a footnote the court listed, with citations, the states retaining adherence to the "lex loci delicti" rule, and those which have abandoned or rejected the rule.

█ We conclude that the law of the place of the wrong is not necessarily the applicable law for all tort actions brought in the courts of this State. Cherokee Laboratories, Inc. v. Rogers, 398 P.2d 520; and Richey v. Cherokee Laboratories, Inc., and Wood v. Cherokee Laboratories, Inc., 515 P.2d 1377, and other cases to the contrary are overruled.

█ We hold, as a general principle, that the rights and liabilities of parties with respect to a particular issue in tort shall be determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties. The factors to be taken into account and to be evaluated according to their relative importance with respect to a particular issue, shall include:

(1) the place where the injury occurred,

(2) the place where the conduct causing the injury occurred,

(3) the domicile, residence, nationality, place of incorporation and place of business of the parties, and

(4) the place where the relationship, if any, between the parties occurred.

In considering the application of the above general rules to these proceedings, and decisions of other courts which have abandoned the rule that the place of the wrong [lex loci delicti] govern the applicable law on all issues in multi-state tort ac-

tions, we find that neither the petitioner nor the respondents contend that certain issues should be determined by the laws of Oklahoma and that other issues should be determined by the laws of Mexico. In other words, all parties, in effect, concede that the laws of Oklahoma or the laws of Mexico should govern in the determination of all issues.

■ This brings us to the crux of the issue presented, and that is: Does the State of Oklahoma or the Republic of Mexico have the most significant relationship to the occurrence and the parties?

The record discloses that all the parties were and still are residents of Oklahoma; the aircraft was hangared and registered in Oklahoma; and the trip originated and was to end in Oklahoma. Although the Republic of Mexico would be concerned with the conduct of the parties while they were within its borders and the accident occurred in Mexico, Oklahoma has the most significant relationship to the occurrence and the parties. And, paraphrasing the language of the California Court in Emery, supra, "it would seem rather undesirable. that the rights and obligations of the parties should be subject to change as the aircraft crossed the boundary lines of each jurisdiction."

We hold the laws of Oklahoma have the most significant relationship to the occurrence and the parties. We affirm the order of the trial court determining that Oklahoma has the most significant relationship with the occurrence and with the parties and its order that the parties' rights and liabilities shall be determined under the Oklahoma law.

■ The general rule herein enunciated shall be applied prospectively to all cases for trial from and after the date the mandate issues herein; and may likewise be applied by the appellate courts in cases which have been tried and are for decision on appeal where it would not prejudice the rights of the litigants. See Kirkland v. General Motors Corporation (1974), Okl., 521 P.2d 1353.

Petition to Review Certified Interlocutory Order granted; Order of the trial court forming the basis for Certified Interlocutory Order affirmed.

All the Justices concur.