**William R. PATTEN, Administrator of the Estate of John H. Patten; William R. Patten; Jane M. Patten; Rebecca J. Patten; and Susan E. Patten, individually, Plaintiffs,**

v.

**GENERAL MOTORS CORPORATION, CHEVROLET MOTOR DIVISION, a Delaware corporation; Bill Ed Chevrolet, Inc., a Delaware corporation; Mark III Industries, Inc., a Florida corporation, Defendants.**

**No. CIV 85–679–R.**

United States District Court, W.D. Oklahoma.

May 29, 1987.

As Corrected Dec. 22, 1987.

Craig Johnson and Gerald P. Green, Page Dobson and Rodney Cook, Holloway, Dobson, Hudson & Bachman, Michael Bardick and Robert S. Baker, Baker, Baker and Smith, W.D. Greenwood, Huckaby, Fleming, Frailey, Chaffin & Darrah, Oklahoma City, Okl., for defendants.

Don G. Holladay and Gretchen A. Harris, Andrews, Davis, Legg, Bixler, Milsten & Murrah, Oklahoma City, Okl., for plaintiffs.

## ORDER

DAVID L. RUSSELL, District Judge.

Having previously determined that this case presented several possible choice of law questions, the Court ordered that each of the parties submit briefs addressing the question of which state's law should be applied on each issue affecting such party. All parties have now submitted briefs as directed and the Court herein determines the law to be applied in this case.

This case arises out of a single vehicle accident in the State of Colorado which resulted in the death of Plaintiffs' decedent, John H. Patten, an Oklahoma resident. Mr. Patten, his wife and daughter and three friends, all Oklahoma residents, had traveled to Colorado for a one-week ski vacation, in a 1982 Chevrolet van which was owned by a Norman, Oklahoma bank of which Mr. Patten was chairman and chief executive officer. The van was designed by General Motors Corporation ("GM") in Michigan, manufactured by GM in Lordstown, Ohio, and then sold and shipped to Mark III Industries, Inc. ("Mark III"), a customizer located in Ocala, Florida. The sale to Mark III was effected through Bill Ed Chevrolet, Inc., a dealership incorporated in Delaware and having its principal place of business in Kentucky. Mark III installed a seat alleged to be defective which was manufactured by Anderson Industries, of Lakeland, Florida and a seat belt, also alleged to be defective, manufactured in Indiana by Indiana Mills & Manufacturing, Inc. Thereafter, Mark III sold the van to Joe Coker Pontiac—GMC ("Joe Coker") in Midwest City, Oklahoma. Joe Coker sold the van to a Norman, Oklahoma resident who defaulted on his loan to purchase the van, after which the bank of which Patten was CEO repos-

sessed the van. Mr. Patten was entitled to personal use of a bank vehicle and elected to use the van as his authorized bank vehicle.

During the return trip to Oklahoma, the van slid on some ice in Costilla County, Colorado and rolled over a decline. Defendant GM notes that Plaintiff William R. Patten, Administrator of the Estate of John H. Patten, has sued the State of Colorado in Colorado state court, alleging that the failure to install a guard rail where the vehicle left the road resulted in the accident and the decedent's fatal injuries.

It is noted that GM is a Delaware corporation with its principal place of business in Michigan and that GM does substantial business throughout the United States, including Colorado. Mark III is a Florida corporation, the principal place of business of which is also in Florida. Vans customized by Mark III are sold in Colorado through GM's dealers in that state. It is also noted that the probate of Mr. Patten's estate was conducted in an Oklahoma state district court; the administrator is an Oklahoma resident; and all Plaintiffs are and have been, since the accident, residents of the State of Oklahoma.

The parties are in this much agreement: either Oklahoma or Colorado law applies with respect to all issues in this case. In other words, none of the parties maintain that any other states mentioned above, which have a relationship to the parties and the occurrence involved in this case, have the most significant such relationship to any of the issues herein. *See generally Brickner v. Gooden,* 525 P.2d 632 (Okla. 1974); Restatement (Second) of Conflict of Laws § 145 (1969). Plaintiffs assert that Oklahoma substantive products liability law and its law with respect to the use of presumptions, reduction of damages based upon comparative fault and survivorship benefits applies. Plaintiffs' analysis by which they reach such conclusion is, to say the least, unique. In the face of obvious conflict between the law of the states of Oklahoma and Colorado on these issues, Plaintiffs maintain, without authority, that

because no state having an arguable interest in having its law applied would apply law other than Oklahoma law, no true conflict of laws exists! Thus, under Plaintiffs' analysis, Oklahoma law applies. Plaintiffs' analysis might be described as a variant of renvoi.[1] Renvoi refers to a choice of law analysis by which the forum state applies its choice of law rule in determining which state's law applies to a given issue and, when application of a foreign state's law is dictated, both the internal law and the choice of law rule of the foreign state are employed which may well result in a full (but arguably unending) circle, with application of the forum's state's law mandated. Plaintiffs would have this Court determine whether a real or merely apparent conflict of laws exists by comparing the internal law of Oklahoma to the whole law of Colorado, including Colorado's choice of law rule.

Defendants GM and Mark III both assert that under Oklahoma's choice of law rule in tort actions, Colorado is the state having the most significant relationship to the parties and the occurrence and therefore its law should be applied. Mark III augments its argument in this regard by reliance on what it contends are presumptions in favor of applying the law of the place where the injury occurred. *See* Restatement (Second) Conflict of Laws § 146 (Personal Injuries) and ·§ 164 (Contributory Fault). According to Defendants' analysis, Colorado's wrongful death statute limiting recovery to the survivors' pecuniary losses should be applied because 1) the injury occurred in Colorado; 2) the conduct causing the injury, which Defendants contend was the negligent operation of the van by driver James O. Melton, occurred in Colorado; 3) a majority of the parties did business in Colorado; 4) if any relationship between the parties existed, it was formed where the alleged defects in the various products manifested themselves to produce injury, i.e. in Colorado; 5) Colorado's wrongful death statute manifests a state policy of protecting those who engage in business in Colorado from susceptibility to liability for

---

**1.** *See* Restatement (Second) of Conflict of Laws   § 8 (1969).

what Defendants characterize as excessive or speculative damages, and thus Colorado has an interest in application of its wrongful death statute to Defendants, both of whom do business in Colorado; 6) Oklahoma has little or no interest in extraterritorial application of its law, *see, e.g., Flanders v. Crane Co.,* 693 P.2d 602 (Okla. 1984); 7) the occurrence of the accident in Colorado was not a mere fortuity; and 8) uniformity of result will be promoted if Colorado's wrongful death statute is applied because Colorado law will apply to Plaintiff administrator's suit in Colorado.

Similarly, Defendants urge that Colorado's comparative fault statute, Colo.Rev. Stat. § 13-21-406 (1981), which Defendants contend has no analogue in Oklahoma, should be applied because Colorado has the most significant contact with the parties and the occurrence in relation to the principles of Section 6 of the Restatement (Second) of Conflict of Laws. Specifically, Defendants postulate that by such statute Colorado has expressed a legislative intent that persons who are at fault should have their recovery reduced proportionate to their fault and a legislative policy of shielding defendants from liability which is excessive in relation to their culpability. Because the accident occurred in Colorado, the alleged negligent or culpable conduct of the Plaintiffs' decedent occurred in Colorado, and Defendants do business there, Defendants argue that Colorado has an interest in application of its law. Defendant Mark III further notes that Florida[2] and Michigan[3] apply the comparative fault doctrine in products liability cases and urges that when the contacts of the various states are counted in accordance with Comment i to Restatement (Second) of Conflict of Laws § 145, the comparative fault doctrine must be applied herein. Mark III also urges that the principles of protection of justified expectations, policies underlying the field of tort law and certainty, predictability and uniformity of result are also best served by application of Colorado's comparative fault statute.

Defendants also urge that Colorado's statutory presumptions for products liability actions, Colo.Rev.Stat. § 13-21-403 (1977) should also be applied under the Restatement (Second) approach to conflicts of law questions because it is the state where the alleged defect in the GM cargo door manifested itself, where the injury occurred and where any relationship between the parties was centered. Defendant GM maintains that these contacts are most significant in light of Colorado's obvious legislative purpose in affording entities such as GM and Mark III, who conduct business in Colorado and whose products enter such state, from products liability; the parties' expectations, given Plaintiffs' decedent's and his family's annual trips to Colorado; and the ease with which this Court could apply Colorado law. Plaintiffs assert that the "mirror image rebuttable presumptions are for the purpose of regulating the conduct of the trial, not to actually determine issues." Plaintiffs' Brief at p. 12. Therefore, in accordance with Restatement (Second) of Conflict of Laws § 134, the forum's local law governs on this issue. Plaintiffs also point out that since none of the allegedly defective products were manufactured or sold in Colorado, Colorado has no interest in application of its statutory presumptions.

## I.

At the outset the Court observes, as noted by Plaintiffs and Defendant GM, that all of the states having significant contacts with the parties and the occurrence involved in this suit recognize a cause of action for products liability. *See, e.g., Kirkland v. General Motors Corp.,* 521 P.2d 1353 (Okla.1974), *Hiigel v. General Motors Corp.,* 544 P.2d 983 (Colo.1975); *Nicolodi v. Harley-Davidson Motor Company, Inc.,* 370 So.2d 68 (Fla.App.1979); *Leichtamer v. American Motors Corp.,* 67 Ohio St.2d 456, 424 N.E.2d 568 (1981). All of those states also specifically recognize a cause of action for lack of crashworthiness.

---

**2.** *See West v. Caterpillar Tractor Co.,* 336 So.2d 80 (Fla.1976); *Hoffman v. Jones,* 280 So.2d 431 (Fla.1973).

**3.** Mich.Comp.Laws § 600.2949.

*See e.g., Lee v. Volkswagen of America, Inc.,* 688 P.2d 1283 (Okla.1984); *Curtis v. General Motors Corp.,* 649 F.2d 808 (10th Cir.1981) (applying Colorado law); *Kern v. General Motors Corp.,* 724 P.2d 1365 (Colo.App.1986); *Roberts v. May,* 41 Colo. App. 82, 583 P.2d 305 (1978); *Nicolodi v. Harley–Davidson Motor Company, Inc.,* 370 So.2d 68 (Fla.App.1979); *Leichtamer v. American Motors Corp.,* 67 Ohio St.2d 456, 424 N.E.2d 568 (1981). Oklahoma and Colorado recognize the defenses of the absence of causation, knowing voluntary assumption of the risk and abnormal use of a product. *See Kirkland v. General Motors Corp.,* 521 P.2d at 1366; *Littlejohn v. Stanley Structures, Inc.,* 688 P.2d 1130 (Colo.App.1984); *Jackson v. Harsco Corp.,* 673 P.2d 363, 365 (Colo.1983); *Union Supply Co. v. Pust,* 196 Colo. 162, 583 P.2d 276, 284 (1978). Thus, there is no true conflict of laws on the existence of a cause of action sounding in products liability and lack of crashworthiness or in the substantive law governing liability therefor (except as below noted) and defenses thereto. Moreover, all parties agree that either Oklahoma or Colorado law applies and that there is no significant difference in the laws of those states which would be applicable herein, save three. Therefore, Oklahoma law will be applied in determining the rights and liabilities of the parties herein, except as otherwise determined herein. As described above, Defendants urge that Colorado's statutes governing wrongful death, comparative fault as a measure of damages and products liability presumptions should be applied because Colorado has the most significant contacts with the parties and occurrence involved herein. Plaintiffs assert there is no real conflict, but that if a true conflict of laws exists, Oklahoma law governs. Because Oklahoma has adopted the Restatement (Second) of Conflict of Laws approach to choice of law questions in tort actions, *see Brickner v. Gooden,* 525 P.2d 632, 637 (Okla.1974), which dictates that the contacts of states having a relationship to the parties and the occurrence be examined with reference to the particular tort issue for which a choice of law is to be made, the Court addresses each of these issues separately.

## II.

### *Wrongful Death*

Colorado's wrongful death statutes, Colo. Rev.Stat. §§ 13–21–202 and 13–21–203,[4] differ substantially from Oklahoma's wrongful death statute, Okla.Stat. tit. 12, § 1053, in that the Colorado statutes have been interpreted to limit the survivors' recovery to their net pecuniary loss as a result of the decedent's death. *See, e.g. Morrison v. Bradley,* 655 P.2d 385 (Colo.1982) (en banc); *Espinoza v. O'Dell,* 633 P.2d 455 (Colo.1981). Net pecuniary loss means the financial benefit, if any which the survivor

---

**4.** Colo.Rev.Stat. § 13–21–202 provides as follows:

When the death of a person is caused by wrongful act, neglect, or default of another, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then, and in every such case, the person who or the corporation which would have been liable, if death had not ensued, shall be liable in an action for damages notwithstanding the death of the party injured.

Colo.Rev.Stat. § 13–21–203 states as follows:

(1) All damages accruing under Section 13–21–202 shall be sued for and recovered by the same parties and in the same manner as provided by in Section 13–21–201, and in every such action the jury may give such damages as they may deem fair and just, with reference to the necessary injury resulting from such death, to the surviving parties who may be entitled to sue; and also having regard to the mitigating or aggravating circumstances attending any such wrongful act, neglect, or default; except that if the decedent left neither a widow, a widower, nor minor children, nor dependent father or mother, the damages recoverable in any such action shall not exceed Forty–Five Thousand Dollars. No action shall be brought and no recovery shall be had under both Section 13–21–201 and Section 13–21–202 and in all cases the plaintiff is required to elect under which section he will proceed.

(2) This section shall apply to a cause of action based on a wrongful act, neglect, or default occurring on or after July 1, 1969. A cause of action based on a wrongful act, neglect, or default occurring prior to July 1, 1969, shall be governed by the law in force and effect at the time of such wrongful act, neglect, or default.

might reasonably have expected to receive from the decedent had he lived. *Espinoza v. O'Dell,* 633 P.2d at 464. Thus, Colorado law does not permit recovery of damages for loss of consortium and grief of the surviving spouse, mental pain and anguish suffered by the decedent, and the grief and loss of companionship of the children of the decedent, recoverable under Oklahoma's wrongful death statute. Okla.Stat. tit. 12, § 1053. A true conflict therefore exists between the internal laws of the states of Colorado and Oklahoma (the only states whose laws the parties urge should apply) and the Court must, consistent with *Brickner v. Gooden,* apply the Restatement (Second) of Conflict of Laws approach to determine which state's law on the issue of damages recoverable for wrongful death should apply.

■ Examining the factors listed in *Brickner v. Gooden,* which are identical to those listed in the Restatement (Second) of Conflict of Laws § 145 (1969), the Court finds that the place of injury was Colorado. The places where the alleged conduct causing injury occurred were Michigan, where the van was designed; Ohio, where the van was manufactured; and Florida, where GM allegedly failed to warn Mark III not to place seats in a position which would allow actuation of the door handle and where Mark III installed the seat and seat belt. The domicile and residence of the decedent and Plaintiffs is Oklahoma. Defendant GM is incorporated in Delaware and has its principal place of business in Michigan. GM also does business in Oklahoma [5] and Colorado. Mark III is incorporated in Florida and has its principal place of business in that state. Mark III does business both in Oklahoma [6] and in Colorado. The place where the relationship between the parties was centered is Oklahoma. It was in Oklahoma that the van designed in Michigan, manufactured in Ohio and customized in Florida was finally placed into the stream of commerce. The van was titled in Oklahoma, owned by an Oklahoma bank, regularly used in Oklahoma by an Oklahoma resident, and was being used by Oklahoma residents at the time of the accident.

Because the conduct causing the injury occurred in so many different states, that factor is of less importance, even though each of the states in which the conduct occurred would have an interest in deterring the alleged conduct in question. See Restatement (Second) of Conflict of Laws § 145 comment e on subsection (2) (1969). Similarly, because the states of residence, places of incorporation and principal places of business of the parties are so varied, these contacts are of lesser importance, except to the extent they are grouped with other contacts, *id.,* and have special significance because of the issue involved. Defendants make much of the fact that they both do a substantial amount of business in Colorado, in an attempt to group these contacts with that of the place where the injury occurred. However, Defendants also do business in Oklahoma, and since neither Colorado nor Oklahoma is the principal place of business or state of incorporation of either of the Defendants, there is no reason to give greater weight to their contacts with Colorado than those with Oklahoma, in analyzing this factor. The place of injury is Colorado, and this contact is ordinarily of greatest significance in tort issues, including the issue of the measure of damages in a wrongful death action, see Restatement (Second) of Conflict of Laws § 178 and § 175 (1969), particularly when the place of injury and the place of the conduct causing the injury are the same. *Id.* at § 178, comment b. *See also* Restatement (Second) of Conflict of Laws § 145 comment e on subsection (2). The place where the relationship of the parties is centered has perhaps greater significance in this case than might otherwise be ascribed to this contact because the multistate contacts involved herein are so scattered and the place of injury was in large part fortuitous. *See id.* The significance of this contact, like the relative significance of the other contacts, however, must be determined with reference to the particular

---

**5.** See Complaint at ¶ 2 and GM's Answer at ¶ I.

**6.** See Complaint at ¶ 4 and Mark III's Answer at ¶ 1.

issue involved—the measure of damages recoverable in a wrongful death action—and the principles of Section 6 of the Restatement (Second) of Conflict of Laws. *See* Restatement (Second) of Conflict of Laws §§ 145, 175 & 178 (1969).

The State of Colorado, the place of injury and where both Defendants do business, has little interest in limiting nonresident survivors' damages in a wrongful death action, particularly where it was largely a fortuity that the crashworthiness of the van was tested there. *See Kinnett v. Sky's West Parachute Center, Inc.*, 596 F.Supp. 1039 (D.Colo.1984). Defendants urge that Colorado's governmental interest advanced by Colo.Rev.Stat. § 13–21–202 is that of protecting those who do business in or whose products enter the state from excessive liability and in turn benefitting consumers by keeping product prices down and enhancing product selection. Thus, Defendants maintain that the statutory policy was intended to benefit both Plaintiffs herein, as consumers in Colorado during trips there, and Defendants, who do business there. However, the Colorado Supreme Court has explained the purpose of the statute differently:

> The state has adopted a policy of limiting wrongful death recovery to the actual property loss which has been suffered by the heirs of the deceased. This policy serves to negate any possibility of a windfall to the decedent's heirs by denying them compensation for injuries which were not their own. Their property interest is protected, and the common law denial of all damages is avoided. *Espinoza v. O'Dell*, 633 P.2d 455, 464 (Colo. 1981).

The Colorado Supreme Court's interpretation of the purpose of this statute is entitled to great deference. Colorado has little or no interest in preventing a "windfall" to the nonresident Plaintiffs in a suit in Oklahoma. Moreover, even if the Court were to accept Defendants' characterization of the purpose of the statute as an additional purpose to be served thereby, Colorado, as the place where the injury occurred and a place where Defendants do business (which business is not related to the sale of the van involved in this accident) would have no greater interest in protecting Defendants from excessive liability than Oklahoma would have in subjecting manufacturers of defective products to liability for the full measure of damages provided in the wrongful death statute. *See generally Kirkland v. General Motors Corporation*, 521 P.2d 1353 (Okla.1974). Because Defendants also do business in Oklahoma and the parties' relationship was centered there, Oklahoma's interest in deterring manufacturers and sellers from placing defective products in the stream of commerce in that state is invoked. *Id.* More importantly, Oklahoma, as the state of residence of the decedent and his survivors, has a strong interest in the welfare of the survivors and in ensuring that they are fully compensated for their loss. The importance of this Oklahoma policy of protecting and compensating the survivors of one whose death is wrongful is demonstrated by an Oklahoma constitutional provision which states that "[t]he right of action to recover damages for injuries resulting in death shall never be abrogated...." Okla. Const. art. 23, § 7. This interest would be served by application of Oklahoma Law. The Restatement (Second) of Conflict of Laws acknowledges that the state of domicile of the decedent and his beneficiaries ordinarily has a greater interest in determination of the issue of the measure of damages for wrongful death, at least where the defendant is also domiciled in that state, than the state of conduct and injury. *See* Restatement (Second) of Conflict of Laws § 178 comment b (1969). Similarly here, where the states of conduct and injury are different but where one state, Oklahoma, is the state of domicile of the decedent and his beneficiaries, and both Defendants also do business in that state, that state—Oklahoma has a greater interest in application of its law to this issue than does any other state. This conclusion is buttressed by the fact that the relationship of all of the parties is centered in Oklahoma. Application of Oklahoma's law will not only further the strong interest of Oklahoma, which is also the forum state, in ensuring that its resi-

dent beneficiaries are fully compensated, *see* Restatement (Second) of Conflict of Laws § 6(2)(b) & (c) and comment on subsection (2), it will serve both basic policies underlying the law of torts—compensating the victims and deterring those who are negligent or who place defective products in the stream of commerce. *Id.* at § 6(2)(e). Because Colorado has little or no interest in application of its limitation on wrongful death recovery based on the purpose ascribed to the limitation by the Colorado Supreme Court, application of Oklahoma law does not derogate Colorado policy. *Id.* at § 6(2)(c). The other principles included in Restatement (Second) of Conflict of Laws § 6 are of lesser importance, but certainly it is not unfair to subject Defendants, who do business in Oklahoma and placed the customized van in the stream of commerce in that state, to liability for the measure of damages provided in Oklahoma's wrongful death statute, *id.* at § 6(2)(d), and comment g to subsection (2), and this Court can apply Oklahoma law with ease. *Id.* at § 6(2)(g) and comment j. to subsection (2).

### III.

### *Comparative Fault*

■ The Court must determine the relative significance of the same contacts, see II, *supra,* to the issue of comparative fault in accordance with the principles of the Restatement (Second) of Conflict of Laws § 6 (1969). *See Brickner v. Gooden,* 525 P.2d 632, 637 (Okla.1974). While the state where the injury occurred will *usually* have the most significant contact on this issue, *see* Restatement (Second) of Conflict of Laws § 164, this is not invariably so, *see, e.g. Sabell v. Pacific Intermountain Express Co.,* 36 Colo.App. 60, 536 P.2d 1160, 1163 (1975), *cert. denied* (July 14, 1975), and does not relieve the Court of the obligation to analyze the significance of the

various contacts in this case. *Id.* The relative significance of the place of injury to this issue and the interest of that state in application of its law scales downward when the occurrence of the injury in that state is or approaches a mere fortuity, *see Kinnett v. Sky's West Parachute Center, Inc.,* 596 F.Supp. 1039, 1041 (D.Colo.1984); *Bruce v. Martin–Marietta Corp.,* 418 F.Supp. 829, 832–33 (W.D.Okla.1975), *aff'd,* 544 F.2d 442 (10th Cir.1976); *Brickner v. Gooden,* 525 P.2d 632, 638 (Okla.1974); Restatement (Second) of Conflict of Laws § 145 comment e on subsection (2), and when the conduct alleged to constitute negligence or fault which caused the injury occurred in another state. *See* Restatement (Second) of Conflict of Laws § 146 comment e. Moreover, where the conduct alleged to have caused injury occurred in multiple states and where the theory of liability is based upon the placement of a defective product in the stream of commerce, *see, e.g., Cheatham v. Thurston Motor Lines,* 654 F.Supp. 211 (S.D.Ohio 1986), it is this Court's opinion that both the place where the Plaintiffs' decedent's alleged culpable conduct[7] occurred—the place of injury, and the places where the allegedly defective products were designed or manufactured are of less significance than the place where the relationship between the parties was centered, where the customized van was finally placed in the stream of commerce. Which of these contacts is most significant with respect to this choice of law issue, however, must finally be determined with reference to the policies and interests which will be subserved by the choice of law. *See* Restatement (Second) of Conflict of Laws § 145. Defendants assert that Colorado, the place of injury, has an interest in application of its comparative fault statute[8] to deter persons from their own misconduct, and to make them responsible for their own actions by

---

7. Defendants contend that Plaintiffs' decedent failed to remonstrate the driver of the van and probably unlocked and unlatched the sliding cargo door as the van rested on the precipice of a cliff before the van began rolling down the incline. See GM's Brief at p. 25.

8. The Colorado statute, entitled "Comparative Fault as Measure of Damages", states as follows:

(1) In any product liability action, the fault of the person suffering the harm, as well as the fault of all others who are parties to the action for causing the harm, shall be compared by the trier of fact in accordance with this section. The fault of the person suffering the harm shall not bar such person, or a party bringing an action on behalf of such person, or his estate, or his heirs from recovering

reducing their recovery in proportion to their causal fault of the accident. Defendants also suggest that Colorado has an interest in protecting defendants such as GM and Mark III, which conduct business in that state, from exposure to liability in excess of their fault and in precluding the necessity of spreading the cost of excessive damages to businesses, insurance companies and citizens in that state, which would be served by application of Colorado's comparative fault statute. But Colorado's interests in protecting Defendants, merely because they do business in that state and the alleged crashworthiness defects manifested themselves and caused injury in that state, is no greater than Oklahoma's interest in deterring the sale or distribution of defective products in that state, where Defendants both do business and placed the products in question in the stream of commerce.[9] And because it appears that Colorado would not apply its products liability comparative fault statute to nonresident plaintiffs where the occurrence of an accident within that state was a mere fortuity, *see Sabell v. Pacific Intermountain Express Co.*, 536 P.2d at 1165–66, application of Oklahoma law to this issue would not infringe an important interest of the state of Colorado. *See* Restatement (Second) of Conflict of Laws, § 145 comment h. *See also* Restatement (Second) of Conflict of Laws § 8 comment k. Moreover, since Colorado's products liability comparative fault

statute applies only to the issue of damages and has no effect on liability, *see Huffman v. Caterpillar Tractor Co.*, 645 F.Supp. 909, 913 (D.Colo.1986); *Welch v. F.R. Stokes, Inc.*, 555 F.Supp. 1054, 1055 (D.Colo.1983), the statute is more in the nature of a limitation on damages or a rule of recovery than a rule regulating conduct. *See Sabell v. Pacific Intermountain Express Co.*, 536 P.2d at 1165–66. Thus, the place where the relationship between the parties is centered and the place where the Plaintiffs and their decedent reside and resided are more significant contacts than the place of injury or the place where the conduct causing injury occurred. *Id. See also* Restatement (Second) of Conflict of Laws § 171 comment b. *Cf. Kinnett v. Sky's West Parachute Center, Inc.*, 596 F.Supp. 1039, 1041 (D.Colo.1984) (state of Plaintiffs' residence and where relationship with Defendant was centered has most significant relationship and greatest interest in application of its law on issue of measure of damages in wrongful death action). Oklahoma law concerning the measure of damages in manufacturer's products liability as opposed to Colorado's products liability comparative fault statute will, therefore, apply in this action.

## IV.

### *Presumptions*

■ Colorado has a statute creating certain rebuttable presumptions applicable in

damages, but the award of damages to such person or the party bringing the action shall be diminished in proportion to the amount of causal fault attributed to the person suffering the harm. If any party is claiming damages for a decedent's wrongful death, the fault of the decedent, if any, shall be imputed to such party.

(2) Where comparative fault in any such action is an issue, the jury shall return special verdicts, or, in the absence of a jury, the court shall make special findings determining the percentage of fault attributable to each of the persons to whom such fault is attributed in determining the total amount of damages sustained by each of the claimants. The entry of judgment shall be made by the court, and no general verdict shall be returned by the jury.

(3) Where comparative fault in any product liability is an issue and recovery is allowed against more than one party, each such party shall be liable for only that portion of the

total dollar amount awarded as damages to any claimant in the proportion that the amount of his causal fault bears to the amount of the causal fault attributed to all parties against whom such recovery is allowed, unless the causal fault of a party is equal to or greater than the causal fault of a claimant making claim against that party in which case that party shall be jointly and severally liable to that claimant.

(4) The provisions of Section 13–21–111 do not apply to any product liability action.

9. The principles of section 6 of the Restatement (Second) of Conflict of Laws that are most relevant to this choice of law issue are the policies of the forum, of other interested states and of the tort law field generally. Thus, the Court does not specifically address the remaining section 6 principles but finds that those principles will be as well served by the choice of Oklahoma law as by that of Colorado law.

products liability suits.[10] None of the other states having contacts with the parties and occurrence in this case have statutes or court-made rules to the same effect of which the Court is aware. Defendants urge that Colorado's rebuttable presumption statute must be applied herein for essentially the same reasons advanced for application of Colorado law to other issues, described above. Plaintiffs maintain that the rebuttable presumptions are not designed to affect decision on the issue of defect but are merely for the purpose of regulating the conduct of trial, which is governed by the law of the forum. *See* Restatement (Second) of Conflict of Laws § 134 (1969). Even if these presumptions are intended to be issue determinative, Plaintiffs assert that Oklahoma law should instead apply because of its most significant contacts relative to the issue of defect.

The Court finds it unnecessary to determine whether Colorado's statutory presumptions are concerned primarily with judicial administration and the burden of going forward with evidence or are more closely akin to rules of substantive law, *see* Restatement (Second) of Conflict of Laws § 134 comment b, because under either analysis, Oklahoma law governs, since Oklahoma is both the forum state and the state having the most significant contacts with respect to the issue of defects. *See* Restatement (Second) of Conflict of Laws § 134 (1969). Again, this is because Oklahoma is the state where the relationship of the parties was centered in that the van was sold and placed in the stream of commerce in that state, titled and used there by Plaintiffs' decedent, the state of the Plaintiffs' and their decedent's residence, and a state in which Defendants do business. Moreover, even if the states where the van and the seat and seatbelt were designed and manufactured and/or installed were deemed to have the most significant relationship to the issue of defects, the Court is cited to and is aware of no such presumptions in those states' laws which would apply herein.

## V.

### Conclusion

The Court concludes that Oklahoma has the most significant relationship to the parties and occurrence herein relative to the issues of the measure of damages applicable in this wrongful death action, the amount of damages recoverable in manufacturer's products liability in relation to the fault of the parties and the burdens production and any applicable presumptions related to proof of defects. Accordingly, Oklahoma law applies to those issues.

---

**10.** Colo.Rev.Stat. § 13–21–403, which states:

(1) In any products liability action, it shall be rebuttably presumed that the product which caused the injury, death, or property damage was not defective and that the manufacturer or seller thereof was not negligent if the product:

(a) Prior to sale by the manufacturer, conformed to the state of the art, as distinguished from industry standards, applicable to such product in existence at the time of the sale;

(b) Complied with, at the time of the sale by the manufacturer, any applicable code, standard or regulation adopted or promulgated by the United States or by this state, or by any agency of the United States or of this state.

(2) In like manner, non-compliance with the Government code standard or regulation existing and in effect at the time of the sale of the product by the manufacturer which contributed to the claim or injury shall create a rebuttal presumption that the product was defective or negligently manufactured.

(3) Ten years after a product is first sold for use or consumption, it shall be rebuttably presumed that the product was not defective and that the manufacturer or seller thereof was not negligent and that all warnings and instructions were proper and adequate.